In the Matter of MARY I. DANIMAN et al., Appellants, against BOARD OF EDUCATION OF THE CITY OF NEW YORK, Respondent.

In the Matter of VERA SHLAKMAN et al., Appellants, against BOARD OF HIGHER EDUCATION OF THE CITY OF NEW YORK, Respondent.

Argued November 24, 1953; decided April 22, 1954.

*Paxton Blair* and *Harold I. Cammer* for Mary I. Daniman and others, appellants. I. The State has never conferred the power on municipalities to prescribe the qualifications, or the terms and conditions of employment, of teachers. In line with this State policy and the decisions giving effect to it, the phrase " employee of the city " in section 903 of the New York City Charter must be denied the capacity to embrace teachers. (*Gunnison* v. *Board of Educ. of City of New York,* 176 N. Y. 11; *Titusville Iron Co.* v. *City of New York,* 207 N. Y. 203; *Matter of Hirshfield* v. *Cook,* 227 N. Y. 297; *Matter of Emerson* v. *Buck,* 230 N. Y. 380; *People ex rel. Wells & Newton Co.* v. *Craig,* 232 N. Y. 125; *Matter of Fuhrmann* v. *Graves,* 235 N. Y. 77; *Matter of Brennan* v. *Board of Educ. of City of N. Y.,* 245 N. Y. 8; *Matter of Divisich* v. *Marshall,* 281 N. Y. 170; *Matter of Ragsdale* v. *Board of Educ. of City of N. Y.,* 282 N. Y. 323; *Nelson* v. *Board of Higher Educ. of City of N. Y.,* 263 App. Div. 144, 288 N. Y. 649.) II. The phrase " any legislative committee ", etc., in section 903 of the New York City Charter does not include this subcommittee of Congress. The context shows it is confined to legislative committees authorized to inquire into the " property, government or affairs " of the city. (*Covell* v. *Heyman,* 111 U. S. 176; *People* v. *Gutterson,* 244 N. Y. 243; *Matter of Donegan,* 282 N. Y. 285; *Matter of Cohen,* 254 App. Div. 571, 278 N. Y. 584; *People ex rel. Marks* v. *Brophy,* 293 N. Y. 469; *Matter of Commonwealth of Kentucky* v. *Dennison,* 24 How. [U. S.] 66; *Newton* v. *Commissioners,* 100 U. S. 548; *Trenton* v. *New Jersey,* 262 U. S. 182; *Williams* v. *Mayor of Baltimore,* 289 U. S. 36.) III. Qualifications upon the tenure principle established by sections 2573 and 6206 of the Education Law can only be made by State law, and not by local laws or charters. (*Sharkey* v. *Thurston,* 268 N. Y. 123; *People ex rel. Elkind* v. *Rosenblum,* 184 Misc. 916, 269 App. Div. 859, 295 N. Y. 929.)

*Ephraim S. London* and *Sherman P. Kimball* for Harry Slochower, appellant. I. Dr. Slochower did not refuse to answer any question relating to his conduct as a teacher or relating to the government, property or affairs of the city. Section 903 of the New York City Charter is therefore not applicable. (*People ex rel. Garvey* v. *Prendergast,* 148 App. Div. 129; *Hale* v. *Worstell,* 185 N. Y. 247; *Maggio* v. *Zeitz,* 333 U. S. 56; *Wieman* v. *Updegraff,* 344 U. S. 183; *Liverpool & London & Globe Ins. Co.* v. *Nebraska Storage Warehouses,* 96 F. 2d 30; *Bridges* v. *Wixon,* 326 U. S. 135; *Schneiderman* v. *United States,* 320 U. S. 118; *De Jonge* v. *Oregon,* 299 U. S. 353; *Herndon* v. *Lowry,* 301 U. S. 242; *Matter of Grae,* 282 N. Y. 428; *People ex rel. Taylor* v. *Forbes,* 143 N. Y. 219; *Matter of Ellis,* 258 App. Div. 558.) II. Appellant Slochower was deprived of property rights without due process of law, in violation of section 10 of article I, and the Fourteenth Amendment of the United States Constitution, and section 6 of article I of the New York Constitution. (*United States* v. *Lovett,* 328 U. S. 303; *Matter of Hamilton* v. *Brennan,* 203 Misc. 536; *Adler* v. *Board of Educ.,* 342 U. S. 485; *United Public Workers* v. *Mitchell,* 330 U. S. 75; *Lanzetta* v. *New Jersey,* 306 U. S. 451; *Winters* v. *New York,* 333 U. S. 507; *Small Co.* v. *American Sugar Refining Co.,* 267 U. S. 233.) III. Section 903 of the New York City Charter is an unconstitutional abridgement of rights guaranteed by section 6 of article I of the New York Constitution. The section is void and of no effect and cannot be held to sanction the appellant's dismissal. (*Matter of Doyle,* 257 N. Y. 244; *People ex rel. Bolton* v. *Albertson,* 55 N. Y. 50; *Matter of Hopper* v. *Britt,* 203 N. Y. 144; *People* v. *Allen,* 301 N. Y. 287; *Frose* v. *Railroad Comm.,* 271 U. S. 583.)

*Denis M. Hurley, Corporation Counsel* (*Michael A. Castaldi, Seymour B. Quel, Helen R. Cassidy, Bernard Friedlander* and *Barbara H. Carroll* of counsel), for respondents. I. Questions asked of a teacher concerning past or present membership in the Communist party relate to the teacher's official conduct. (*Adler* v. *Board of Educ.,* 342 U. S. 485; *Dennis* v. *United States,* 341 U. S. 494; *Communications Assn.* v. *Douds,* 339 U. S. 382; *Garner* v. *Los Angeles Bd.,* 341 U. S. 716; *Matter of*

*Rabouine* v. *McNamara,* 301 N. Y. 785; *Matter of Adler* v. *Wilson,* 282 App. Div. 418; *United States* v. *Field,* 193 F. 2d 92, 342 U. S. 908.) II. Teachers in the public schools and colleges are employees of the City of New York within the purview of section 903 of the New York City Charter. (*Matter of Finegan* v. *Cohen,* 275 N. Y. 432; *Matter of Mooney* v. *Cohen,* 272 N. Y. 33; *Johnson* v. *City of New York,* 274 N. Y. 411; *Matter of Tormey* v. *La Guardia,* 172 Misc. 1091, 259 App. Div. 802, 284 N. Y. 607; *Eriksen* v. *City of New York,* 167 Misc. 42; *Matter of Koral* v. *Board of Educ. of City of N. Y.,* 197 Misc. 221; *Matter of Goldway* v. *Board of Higher Educ. of City of N. Y.,* 178 Misc. 1023; *Matter of Withrow* v. *Joint Legislative Comm.,* 176 Misc. 597; *Matter of Hirshfield* v. *Cook,* 227 N. Y. 297; *Gunnison* v. *Board of Educ. of City of N. Y.,* 176 N. Y. 11; *Matter of Dobrovolny* v. *Prendergast,* 219 N. Y. 280; *Clarke Co.* v. *Board of Educ. of City of N. Y.,* 156 App. Div. 842, 215 N. Y. 646; *Lewis* v. *Board of Educ. of City of N. Y.,* 258 N. Y. 117; *McCabe* v. *Gross,* 274 N. Y. 39; *Metzger* v. *Swift,* 258 N. Y. 440; *Matter of Kelly* v. *Board of Educ. of City of N. Y.,* 234 App. Div. 239, 259 N. Y. 518.) III. A United States Senate subcommittee investigating the operation of internal security laws is a legislative committee within the meaning of section 903 of the New York City Charter. (*People* v. *Lafaro,* 250 N. Y. 336; *Matter of Smith* v. *Kern,* 175 Misc. 937, 260 App. Div. 1003, 285 N. Y. 632; *People ex rel. McDonald* v. *Keeler,* 99 N. Y. 463; *People ex rel. Karlin* v. *Culkin,* 248 N. Y. 465; *Matter of Edge Ho Holding Corp.,* 256 N. Y. 374; *Matter of Joint Legislative Comm. [Teachers Union],* 285 N. Y. 1; *Matter of La Guardia* v. *Smith,* 176 Misc. 482, 262 App. Div. 708, 288 N. Y. 1.) IV. The provisions of section 903 of the New York City Charter are self-executing. A hearing is neither required nor necessary. (*Canteline* v. *McClellan,* 282 N. Y. 166; *Matter of Hulbert* v. *Craig,* 124 Misc. 273, 213 App. Div. 865, 241 N. Y. 525; *Matter of Tormey* v. *La Guardia,* 172 Misc. 1091, 259 App. Div. 802, 284 N. Y. 607; *Matter of Finegan* v. *Cohen,* 275 N. Y. 432.)

*Robert M. Benjamin* and *Frank E. Karelsen* for Public Education Association, *amicus curiæ,* in support of appellants' position. Section 903 of the New York City Charter is inapplicable

to teachers employed by the board of education or the board of higher education. (*Matter of Fuhrmann* v. *Graves,* 235 N. Y. 77.)

CONWAY, J. Petitioners who are teachers — the first group in public schools, the second group in public colleges — were subpœnaed and appeared in September and October of 1952 before Senator Homer Ferguson, sitting in New York as a subcommittee of the Committee on the Judiciary of the Senate of the United States to investigate the administration of the Internal Security Act and other internal security laws.

Among other questions each of the petitioners was asked whether he or she was presently or had ever been a member of the Communist party. Each of them refused to answer, basing the refusal upon the privilege against self incrimination granted by the Fifth Amendment to the United States Constitution.

The board of education and the board of higher education received certified copies of the transcript of the minutes of the hearing. Each of these boards was advised by the corporation counsel of the City of New York that the refusal to answer questions on the only ground which was sustained, viz., the privilege granted by the Fifth Amendment, constituted a refusal to answer the respective questions on the ground that the answer would tend to incriminate within the meaning of section 903 of the New York City Charter and that questions directed to employees of the boards concerning past or present membership in the Communist party constituted an inquiry into the employees' official conduct within the purview of the same section. Thereupon, the boards adopted resolutions terminating the employment of petitioners and declaring their positions vacant pursuant to the provisions of section 903. There is no claim by petitioners that their refusal to answer the questions based upon the privilege granted them by the Fifth Amendment does not constitute a refusal to answer upon the ground that the answer would tend to incriminate them within the meaning of Charter section 903, but only that the section, for various reasons to be discussed, is not applicable.

In this proceeding we are required to and do accept as truthful petitioners' assertion that answers to the questions propounded might have tended to incriminate them since that is the only

reason that persons questioned by a congressional committee concerning their affiliation with the Communist party are entitled to invoke the protection of the Fifth Amendment to the United States Constitution (see *Blau* v. *United States,* 340 U. S. 159). Similarly, we do not presume, of course, that these petitioners by their action have shown cause to be discharged under the Feinberg Law (L. 1949, ch. 360) since no inference of membership in the Communist party may be drawn from the assertion of one's privilege against self incrimination.

Section 903 reads: " If any councilman or other officer or *employee* of the city shall, after lawful notice or process, wilfully refuse or fail to appear before any court or judge, *any legislative committee,* or *any* officer, board or body authorized to conduct *any* hearing or inquiry, or *having appeared shall refuse* to testify or to *answer any question* regarding the property, government or affairs of the city or of any county included within its territorial limits, *or regarding* the nomination, election, appointment or *official conduct* of any officer *or employee* of the city or of any such county, *on the ground that his answer would tend to incriminate him,* or shall refuse to waive immunity from prosecution on account of any such matter in relation to which he may be asked to testify upon any such hearing or inquiry, his term or tenure of office or employment shall terminate and such office or employment be vacant, and he shall not be eligible to election or appointment to any office or employment under the city or any agency.'' (Emphasis supplied.)

Section 903 is inoperative if the teacher gives either an affirmative or negative answer to the question posed — even though the answer be false. The effect of the answer on the teacher's fitness to continue teaching is for the board of education or of higher education, and those bodies only, to say. Section 903 becomes applicable only if the teacher witness refuses to answer upon the ground that the answer would tend to incriminate him or her. The teacher alone possesses the power to bring the statute into play. The assertion of the privilege against self incrimination is equivalent to a resignation (*Matter of Koral* v. *Board of Educ. of City of N. Y.,* 197 Misc. 221). As the Supreme Court said in *Adler* v. *Board of Educ.* (342 U. S. 485, 492, affg. *sub nom. Thompson* v. *Wallin,* 301 N. Y. 476) : '' It is equally

clear that they [teachers] have no right to work for the state in the school system on their own terms. [Case cited.] They may work for the school system upon the reasonable terms laid down by the proper authorities of New York. If they do not choose to work on such terms, they are at liberty to retain their beliefs and associations and go elsewhere." And, many years ago Justice Holmes in *McAuliffe* v. *New Bedford* (155 Mass. 216, 220) said similarly: " The petitioner [a policeman] may have a constitutional right to talk politics, but he has no constitutional right to be a policeman. There are few employments for hire in which the servant does not agree to suspend his constitutional right of free speech, as well as of idleness, by the implied terms of his contract. The servant cannot complain, as he takes the employment on the terms which are offered him. On the same principle, the city may impose any reasonable condition upon holding offices within its control."

There is nothing novel about such a statute. Other statutes provide for the vacatur of, or forfeiture of, an office or employment upon the happening of an event specified therein. (See, e.g., Greater New York Charter, § 1549, now New York City Charter, § 895; *Matter of Hulbert* v. *Craig,* 124 Misc. 273, affd. 213 App. Div. 865, affd. 241 N. Y. 525; *Metzger* v. *Swift,* 231 App. Div. 598; *Metzger* v. *Swift,* 258 N. Y. 440; Public Officers Law, § 30; *Matter of Buhler,* 43 Misc. 140; *Ginsberg* v. *City of Long Beach,* 286 N. Y. 400.) The people have similarly provided in our State Constitution as to all public officers who refuse to sign waivers of immunity under certain circumstances (art. I, § 6, and see *Cantaline* v. *McClellan,* 282 N. Y. 166, and cases cited therein).

There is no conflict between section 903 of the Charter and equally valid though differing procedures under the Feinberg Law (L. 1949, ch. 360) and under sections 2554, 2573 and 6206 of the Education Law which guarantee to teachers the right to hold their respective positions during good behavior and efficient and competent service and not to be removed except for cause after a hearing by the affirmative vote of a majority of the board. Section 903 of the Charter, the Feinberg Law and sections 2554, 2573 and 6206 of the Education Law are legislative enactments of equal dignity. The sections in the Education Law govern the removal of teachers for cause gen-

erally by the board of education and not by the city, whereas the Charter section declares that there shall be a vacatur of office or employment for a particular cause. It merely imposes a condition upon public employment. The legislative acts are to be read in harmony and it is not within our judicial competence to decide for the Legislature, the board of education or the City of New York which shall be used.

Following the adoption of the resolutions of the boards terminating the employment of petitioners, they commenced these two article 78 proceedings. Special Term concluded that section 903 applied and had been violated by petitioners. The petitions were dismissed. The Appellate Division, Second Department, affirmed, two Justices dissenting. The majority held that teachers in New York City public schools and colleges are city employees within the meaning of Charter section 903; that the Charter section is applicable to a hearing before a Federal legislative committee; that an inquiry into past or present membership in the Communist party is an inquiry regarding official conduct of a city officer or employee; that such inquiry is not barred by the provisions of sections 25 and 26-a of the Civil Service Law; that the Charter is not a local law within the meaning of section 2 of the City Home Rule Law and that the Charter provisions do not abridge the constitutional privilege against self incrimination. The dissenting Justices agreed with the majority that section 903 is applicable to a hearing before a Federal legislative committee; that an inquiry into past or present membership in the Communist party is an inquiry regarding official conduct of a city officer or employee and that the Charter is not a local law within the meaning of the City Home Rule Law. They were at variance, however, with the conclusion of the majority that petitioners were employees of the City of New York within the meaning of section 903.

In this court we are all agreed that the Communist party is a continuing conspiracy against our Government. (See, *Communications Assn.* v. *Douds,* 339 U. S. 382, 425 *et seq.*; *Dennis* v. *United States,* 341 U. S. 494, 564; Preamble to the Feinberg Law (L. 1949, ch. 360, § 1.) We are also all in agreement that an inquiry into past or present membership in the Communist

party is an inquiry regarding the official conduct of an officer or employee of the City of New York. Loyalty to our Government goes to the very heart of official conduct in service rendered in all branches of Government. (See N. Y. Const., art. XIII, § 1; Education Law, § 3002; Civil Service Law, §§ 12a, 30; L. 1951, ch. 233, §§ 1, 8.) Communism is opposed to such loyalty. (*Communications Assn.* v. *Douds,* 339 U. S. 382, 425 *et seq., supra; Dennis* v. *United States,* 341 U. S. 494, 564, *supra.*) Internal security affects local as well as National Governments.

We are in disagreement in this court only as to two questions. They are (a) whether the Charter section is applicable to a hearing before a Federal legislative committee and (b) whether the petitioners are employees of the City of New York. All of the six Justices below were in accord in answering (a) in the affirmative.

As to (a), we, the majority, agree with all of the Justices below that section 903 is applicable to a hearing before a Federal legislative committee. The language in section 903 is: " *any* legislative committee, or *any* officer, board or body authorized to conduct *any* hearing or inquiry * * *." We cannot say that that language excepted a legislative committee of our National Government for we read " any " to mean " any ".

As to (b), when the Legislature adopted the Charter of the City of New York and the Administrative Code it declared that it intended " to provide an administrative code for the city of New York harmonizing with the provisions of the New York city charter " (Administrative Code, § 982–1.0) and directed that the code was to be " construed liberally ". (Administrative Code, § 982–2.0.) In section 981–1.0 of the Administrative Code the Legislature defined an employee as " Any person whose salary in whole or in part is paid out of the city treasury ". This language cannot be misread. Petitioners are paid by check signed by the city treasurer with funds from the city treasury.

The Education Law (§§ 2553, 6201) empowers the Mayor of the City of New York to appoint the members of the board of education and to appoint and remove the members of the board of higher education. The City Charter (§ 522) requires the board of education to submit an annual written report to the

Mayor. The Education Law (§§ 2576, 6202) requires both boards to submit to the board of estimate expense budget estimates, just as city departments do (see, also, New York City Charter, § 895); counsel for the city is their counsel (New York City Charter, § 394, subd. a; *Matter of Kay* v. *Board of Higher Educ. of City of N. Y.,* 260 App. Div. 9, motion for leave to appeal denied 285 N. Y. 859); the boards of education and higher education are before us asserting, not denying, the applicability of section 903 of the City Charter and section 982–1.0 of the Administrative Code to them and the petitioner teachers. We have, in many cases involving teachers, written that in matters *strictly* educational or pedagogic a board of education is not a department of the city government, but an independent public body; that public education is a State and not a municipal function and that it is the policy of the State to separate matters of public education from the control of municipal government. (*Matter of Hirshfield* v. *Cook,* 227 N. Y. 297, 301; *Matter of Divisich* v. *Marshall,* 281 N. Y. 170; *Titusville Iron Co.* v. *City of New York,* 207 N. Y. 203, 208; *Gunnison* v. *Board of Educ. of City of N. Y.,* 176 N. Y. 11.) We have in so doing, however, been careful to point out, as already indicated, in *Matter of Hirshfield* v. *Cook* (*supra*) that: '' If the state through its legislature intends to make the board of education of the city wholly independent of municipal action and prevent the city or the officers and boards thereof from asserting any authority relating to matters connected with the public schools and the determination of the expenditures therefor, it should be stated by it in such clear language that its intention is ' unmistakable ' '' (pp. 309–310) and that: '' while the educational affairs in each city are under the general management and control of the board of education, such board is subject to municipal control in matters not *strictly* educational or pedagogic.'' (P. 304; emphasis supplied.) Thus, board of education employment must be added to other municipally paid service in determining seniority rights under section 31 of the Civil Service Law. (*Matter of Schaefer* v. *Rathmann,* 237 App. Div. 491, 494–495, affd. 262 N. Y. 492); employees of the board of education are employees of the city under section 896 of the New York City Charter making it a crime to conspire to defraud the city (*People* v.

*Engel,* 200 Misc. 60) ; the offices of trustee of Hunter College of the City of New York and of members of the board of higher education are offices '' connected with the government of the City of New York '' within the meaning of section 1549 of the Greater New York Charter (now New York City Charter, § 895) which prohibits dual office holding by city officers. (*Metzger* v. *Swift,* 258 N. Y. 440, *supra*; see, also, Education Law, §§ 2554, 2573, 6206; New York City Charter, § 896.)

The State has the power to determine what shall constitute a vacatur of public office or employment and, in enacting statutes, to *define* the terms used therein as in its wisdom it sees fit. Thus, it may define who are employees of the City of New York and we must accept the legislative definition as binding upon us. (*Matter of Bronson,* 150 N. Y. 1; McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 75; *People ex rel. Champlin* v. *Gray,* 185 N. Y. 196, 200.) It has made the *source* of the compensation the determinant factor.

Petitioners are in reality asking us to take the words used to frame concepts affecting the administration of education in matters strictly educational and pedagogic and to enlarge and expand their meaning so as to include something which transcends matters that are strictly educational and pedagogic, on the one hand, and then rewrite the Administrative Code (§ 981–1.0, subd. 7) so that the words '' Any person whose salary in whole or in part is paid out of the city treasury '' as used to define an employee of the city shall not mean that teachers are employees of the city, although their salaries are paid by check of the city treasurer from the city treasury. This we may not do but must take clear, simple and unambiguous words of the Legislature as we find them. (*Meltzer* v. *Koenigsberg,* 302 N. Y. 523, 525; *Matter of Rathscheck,* 300 N. Y. 346, 350, 353; *Matter of Tishman* v. *Sprague,* 293 N. Y. 42, 50.)

Finally, it is urged that at the time the Charter was approved and when it became effective in 1938 the Legislature did not have in mind the specific purpose for which section 903 is now being used. Whether or not that be true is doubtful indeed since the Supreme Court of the United States has upheld the deportation of legally resident aliens because of membership in the Communist party for periods between 1925 and 1939 in

*Harisiades* v. *Shaughnessy* (342 U. S. 580). Section 903 became effective January 1, 1938. But even if it were to be accepted as true it would be of little moment here. More than fifty years ago in *Hudson Riv. Tel. Co.* v. *Watervliet Turnpike & Ry. Co.* (135 N. Y. 393, 403–404), we said: " The words of the statute are to be interpreted according to their natural and obvious meaning, and, as the terms employed are not ambiguous, extrinsic facts are not available to restrict the authority which it plainly confers. The language, literally construed, includes undiscovered, as well as existing modes of operation. * * * It would be an unjust reflection upon the wisdom and intelligence of the law-making body to assume that they intended to confine the scope of their legislation to the present, and to exclude all consideration for the developments of the future." And only recently in *Matter of Di Brizzi* (*Proskauer*) (303 N. Y. 206 [1951]), this court upheld the use of a statute (Executive Law, § 62, subd. 8, now § 63, subd. 8) to permit the creation of a " New York State Crime Commission ", which was originally enacted a few weeks after our entry into World War I as a " Peace and Safety Act " (L. 1917, ch. 595) for the purpose of dealing with wartime sabotage, espionage and subversive activities of enemy agents and sympathizers, and the repeal of which the Attorney-General of the State had recommended to the Legislature because it was " suited to war conditions ". (1918 Atty.-Gen. 16.) And so, here, section 903 protects the people of the city and the State's chartered municipalities from dangers encompassed by the language of the statute, even though the precise danger may not have been envisioned at the moment of passage.

The orders appealed from should be affirmed, without costs.

Desmond, J. (dissenting). That communism in the United States is a conspiracy against our Government, and that participation in such a conspiracy is entirely inconsistent with the loyalty required from a schoolteacher, are undisputed propositions which do not decide this case. Our duty, on this appeal, as on any other, is to apply the laws of this State as we find them, to communists, noncommunists, and everyone else. No purpose, however high or urgent, suspends the salutary rule not to be stretched to cover situations having no real or reason-that " statutes, directed against known and stated evils, are

able relation to those evils (see McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], §§ 95, 141, 146, and cases cited; also *Kauffman & Sons Saddlery Co.* v. *Miller,* 298 N. Y. 38, 44, 45, and *Matter of Breen* v. *New York Fire Dept. Pension Fund,* 299 N. Y. 8, 19) '' (*Metropolitan Life Ins. Co.* v. *Durkin,* 301 N. Y. 376, 381). If more or different statutes are needed to rid the schools of communist teachers, it is for the Legislature to enact them, and the New York State Legislature has shown no reluctance to do so, nor has this court hesitated to enforce them (see the '' Feinberg Law '', Education Law, § 3022, as construed in *Thompson* v. *Wallin,* 301 N. Y. 476; *Matter of Adler* v. *Wilson,* 282 App. Div. 418, motion for leave to appeal denied 306 N. Y. 981). Ours is the judicial task, limited by judicial powers, of interpreting and applying section 903 of the New York City Charter as enacted in 1938. We find nothing in that section's language, history or known purposes to justify using it, as it is being used here, as authority for ousting public schoolteachers, employed by respondent board of education, because of their refusals to answer questions put to them by a subcommittee of the United States Senate, appointed to investigate the administration of the Federal Internal Security Laws, as to the teachers' past or present membership in the Communist party. All sides concede that, aside from the supposed applicability of section 903, the teachers could not be deprived of their positions, for exercising their Fifth Amendment right (see *Matter of Grae,* 282 N. Y. 428, 434). We turn then to the Charter provision, and we find it clear, concise and complete: '' § 903. * * * If any councilman or other officer or employee of the city shall, after lawful notice or process, wilfully refuse or fail to appear before any court or judge, any legislative committee, or any officer, board or body authorized to conduct any hearing or inquiry, or having appeared shall refuse to testify or to answer any question regarding the property, government or affairs of the city or of any county included within its territorial limits, or regarding the nomination, election, appointment or official conduct of any officer or employee of the city or of any such county, on the ground that his answer would tend to incriminate him, or shall refuse to waive immunity from prosecution on account of any such matter

in relation to which he may be asked to testify upon any such hearing or inquiry, his term or tenure of office or employment shall terminate and such office or employment shall be vacant, and he shall not be eligible to election or appointment to any office or employment under the city or any agency.''

Section 903 is inapplicable to these appellants in this situation for at least two separate reasons: first, no appellant is an '' employee of the city '' within the meaning of the law; and, second, the United States Senate group whose questions appellants refused to answer was not authorized to conduct an inquiry into the property, affairs and government of the city or the official conduct of its officers and employees.

First, as to whether these teachers are '' employees of the city '', section 1 of article XI of our State Constitution makes public education a State function, and the policy of this State for a century '' has been to separate public education from all other municipal functions and intrust it to independent corporate agencies '' such as boards of education (*Gunnison* v. *Board of Educ. of City of N. Y.,* 176 N. Y. 11, 23). '' The board of education is a corporation separate and distinct from the city of New York '' (*Titusville Iron Co.* v. *City of New York,* 207 N. Y. 203, 208). Matters of appointment of teachers and permanency of their employment have been, by the State Education Law, taken away from the municipalities and given to the education boards (*Matter of Emerson* v. *Buck,* 230 N. Y. 380, 385). The grants of authority to the boards to administer public education within New York City are exclusive, and negative any authority in the city itself to exercise like powers (*People ex rel. Wells & Newton Co.* v. *Craig,* 232 N. Y. 125, 135). The long struggle between the Buffalo board of education and the City of Buffalo, described in *Matter of Emerson* v. *Buck* (*supra*), was ended by this court's declaration thirty years ago, in *Matter of Fuhrmann* v. *Graves* (235 N. Y. 77, 82, 83), that, while the city controls the total amount to be expended for education, it has no control whatever over the manner of its spending (see, also, *Matter of Brennan* v. *Board of Educ. of City of N. Y.,* 245 N. Y. 8, 14). There followed an impressive train of cases holding that public schoolteachers, in the cities of the State, were employees, not of those cities but of the

local boards of education as separate corporate bodies (*Matter of Gelson* v. *Berry,* 233 App. Div. 20, 21, affd. 257 N. Y. 551; *Matter of Ragsdale* v. *Board of Educ. of City of N. Y.,* 282 N. Y. 323, 325; *Nelson* v. *Board of Higher Educ. of City of N. Y.,* 263 App. Div. 144, 148, affd. 288 N. Y. 649).

It is, therefore, indisputable, not only that the State Constitution and judicially declared State policy bar New York City from the role of " employer " of teachers, but, also, that, as between the City of New York and these teachers, there are none of the marks of an employer-employee relationship, since it is not the city, but the separate boards of education, which select and hire the teachers, pay them, control their teaching work, and are empowered to remove them for cause after hearing (see Education Law, § 2, subd. 14; and §§ 2550, 2551, 2573, 3012, 3022, 6206). Statutes and decisions (cited in great numbers in respondent's brief) relating to other than pedagogical matters or pedagogical personnel have nothing to do with the present problem. The question here is as to whether teachers are " employees of the city ". Actually, the only ground suggested for an affirmative answer to that question is the definition in section 981–1.0 of the New York City Administrative Code (a statute separate from, but complementary to, the Charter) of " employee " as " any person whose salary in whole or in part is paid out of the city treasury." The salaries of teachers are " paid out of the city treasury " from funds there on deposit to the credit of the board of education, but we refuse to believe that this sixteen-word definition, in a general statute not concerned with education, destroys the whole public policy of this State, worked out in more than a century of struggle, of seeing to it that public schoolteachers are definitely not employees of the cities of this State. Until now, there has never been a decision of this court holding any teacher to be an " employee " of a city.

A second, and separate, reason why section 903 has no application to this situation is that this Senate subcommittee was not authorized to, and disclaimed any purpose to, conduct an inquiry into New York City's governmental affairs or the " official conduct " of any " employee " of the city or of the board of education. It may be possible, grammatically, to

read the statute's language: "any legislative committee * * * authorized to conduct any hearing or inquiry" as unrelated to the later phrases in the same sentence: "regarding the property, government or affairs of the city * * * or regarding the * * * official conduct of any officer or employee of the city". But that grammatical possibility is a logical impossibility, and the result would be a statutory monstrosity, whereby an upstate town board or a legislative committee from another State could bring about the firing of a New York City employee because the latter refused to answer the questions of the interlopers, about his official conduct. We do not so construe statutes, especially since we know historically (and as respondents themselves tell us) that section 903 was one of the by-products of the "Seabury Investigation" of 1932. It is most unlikely that the New York State Legislative Committee, of which Judge SEABURY was counsel, or the Legislature itself in setting up the Charter Revision Commission in 1934, or the commission in its 1936 recommendation of a new charter for New York City, or the Legislature or the people of the city in voting for it, intended to deal with a situation where a foreign legislative body might question New York City employees about New York City's governmental affairs. What section 903 contemplates is an inquiry by a New York State, or New York City, legislative committee or officer or board or body authorized to investigate the city government. This subcommittee of the United States Senate was not and did not on this occasion claim to be such a committee, officer, board or body.

What section 903 means is that a city officer or employee must answer the question of a qualified investigating body concerning the city's affairs, or concerning the conduct of city business by the questioned city officer or employee, or by any other city officer or employee, or forfeit his employment. When, in 1949, the Legislature determined (see findings attached to L. 1949, ch. 360) that the Communist party had been infiltrating into public employment in the public schools, it passed the appropriate (Feinberg) Act to deal with that situation (Education Law, § 3022). But the 1938 City Charter of New York dealt with something else entirely, that is, with facilitating

local and State investigations of New York City affairs. Membership of teachers in the Communist party may, under the Feinberg Law, prove the teacher's unfitness to be a teacher, and Feinberg Law procedures should be used to bring about any removals for that cause. Refusal of a teacher in a properly authorized investigation, to co-operate by answering questions as to membership in subversive organizations may justify dismissal after hearing, under sections 2573 or 6206 of the Education Law, and those procedures are available and lawful.

In each case, the order should be reversed and the petition granted, with costs in all courts.

LEWIS, Ch. J., FROESSEL and VAN VOORHIS, JJ., concur with CONWAY, J.; DESMOND, J., dissents in opinion in which DYE and FULD, JJ., concur.

Orders affirmed.