GEORGE R. FAXON *vs.* SCHOOL COMMITTEE OF BOSTON.

Suffolk.      January 5, 1954. — July 1, 1954.

Present: QUA, C.J., LUMMUS, RONAN, WILLIAMS, & COUNIHAN, JJ.

*School and School Committee. Constitutional Law,* Self incrimination, Due process of law, Public employment, Ex post facto law, Bill of attainder. *Public Employment.*

Dismissal by a school committee in accordance with the procedural requirements of G. L. (Ter. Ed.) c. 71, § 42, as amended, of a teacher employed "at discretion" for asserting his constitutional privilege against self incrimination before a duly accredited subcommittee of the United States Senate by refusing to answer questions as to whether he was a member of the Communist Party, whether he had attempted to recruit students, a fellow teacher and others for communism, and whether he had attended certain meetings of that party, was not arbitrary, irrational, unreasonable, irrelevant to the task of the school committee of properly administering the school system, or in excess of the committee's powers under the statute. [534–535]

There was no derogation of a public school teacher's constitutional privilege against self incrimination nor denial of due process of law to him through his dismissal by the school committee, acting under its statutory powers, for asserting such privilege before a duly accredited subcommittee of the United States Senate by refusing to answer certain questions as to his affiliation with and activities in behalf of communism.  [535–538]

In a dismissal by a school committee of a teacher for asserting his privilege against self incrimination before a duly accredited subcommittee of the United States Senate by refusing to answer certain questions as to his affiliation with and activities in behalf of communism, an expression of the committee's view that it was the duty of a teacher to avoid equivocation in matters of loyalty and that failure in that duty would constitute "conduct unbecoming a teacher" was not the making of a new rule or regulation of a legislative nature affecting anything previously done by the teacher.  [538]

PETITION for a writ of mandamus, filed in the Supreme Judicial Court for the county of Suffolk on August 10, 1953.

The case was reported by *Spalding*, J., without decision.

*Oliver S. Allen*, (*Lawrence D. Shubow* with him,) for the petitioner.

*William H. Kerr*, (*William L. Baxter*, Corporation Counsel, with him,) for the respondents.

*Howard S. Whiteside*, by leave of court, submitted a brief as amicus curiae.

QUA, C.J.  The petitioner seeks reinstatement by writ of mandamus to his position as a master in the Boston Latin School, from which he was dismissed by order of the respondents on June 22, 1953.  The facts are fully set forth in the petition, all of the allegations of which are admitted by the answer.  The parties have stipulated that the merits of the cause may be adjudicated upon the petition and the answer.

The crucial facts thus established may be succinctly stated. For many years preceding March 26, 1953, the petitioner had been employed as a teacher to serve "at discretion" under G. L. (Ter. Ed.) c. 71, § 41, as amended, in the public schools of the city of Boston.  On that day he was called before a duly authorized subcommittee of the United States Senate, acting within its powers, and there declined on the ground of self incrimination to answer questions ·as to

whether he was then a member of the Communist Party, whether while teaching in various designated Boston schools he had tried to recruit students or others into the Communist Party or into the Young Communist League, whether he had ever made an effort to recruit a fellow teacher into the Communist Party, and whether he had attended any secret meetings of the Communist Party in or out of Massachusetts.[1] The school committee, after notice, charges, a hearing, and recommendation of the superintendent, all in accordance with G. L. (Ter. Ed.) c. 71, § 42, as then most recently amended by St. 1947, c. 597, § 2, unanimously voted to dismiss the petitioner "for conduct unbecoming a teacher" in refusing to answer these questions.

Whether such refusal is accurately described as "conduct unbecoming a teacher" within the scope of those words as used in § 42, or should rather have been considered as coming under the designation "other good cause," which also appears in that section, is in our opinion immaterial, since it is clear that the notice, charges, hearing, and dismissal were all predicated upon the refusal of the petitioner to answer before the Senate committee the questions hereinbefore described. The fundamental issue in the case is whether a teacher employed "at discretion" can be dismissed for asserting his constitutional right not to answer those questions.

It is not too much to say that in this Commonwealth from time immemorial school committees have had general charge and control over the public schools, including the power to employ and to dismiss teachers and to fix their compensation. *Knowles* v. *Boston,* 12 Gray, 339. *Leonard* v. *School Committee of Springfield,* 241 Mass. 325, 328–330. *Decatur* v. *Auditor of Peabody,* 251 Mass. 82. These powers are recognized and continued and in some respects regulated by existing statutes. G. L. (Ter. Ed.) c. 71, §§ 37, 38, 42 as appearing in St. 1934, c. 123, and as amended by St. 1946, c. 195, St. 1947, c. 597, § 2, and St. 1953, c. 244.

---

[1] He also declined to answer two or three questions as to his acquaintance with one Philbrick. The importance of these questions did not appear.

Permissible grounds for dismissal are stated in § 42 to be "inefficiency, incapacity, conduct unbecoming a teacher . . ., insubordination or other good cause." This has been held to include any ground "which is not arbitrary, irrational, unreasonable, or irrelevant to the committee's task of building up and maintaining an efficient school system." *Rinaldo* v. *School Committee of Revere,* 294 Mass. 167, 169. We do not believe that dismissal of a teacher for pleading self incrimination before a Senate committee when asked about affiliation with the Communist Party can be held by the courts to be arbitrary, irrational, unreasonable, or irrelevant to the task of the school committee. The responsibility for determining grounds for dismissal rests primarily with the school committee and not with the court. Refusal to testify does not prove guilt and no inference of guilt can be drawn from it in a criminal case. *Opinion of the Justices,* 300 Mass. 620. But the question here is not one of guilt or innocence. It is a question of administration by a public board in the public interest. Neither the school committee nor the court exists in a vacuum. Neither can profess ignorance of the currents of opinion which sway great masses of the people. It cannot be doubted that multitudes of people in this community regard with abhorrence the Communist Party and communism as that term is generally understood. It is not for this court to say why this is so or whether this feeling has gone too far or not far enough. It is sufficient for us that the feeling exists. Nothing the court can do or say will prevent the public from drawing its own inferences from refusals to testify. It is apparent that a school teacher has extensive and peculiar opportunity to impress his attitude and views upon pupils in his charge. It was the petitioner's statutory duty to impress upon them "love of their country." G. L. (Ter. Ed.) c. 71, § 30. See also G. L. (Ter. Ed.) c. 71, § 30A, inserted by St. 1935, c. 370, § 1, and amended by St. 1948, c. 160, § 2 (the "teachers' oath"). Yet some of the questions which the petitioner declined to answer bore directly upon the recruiting of students for communism. The school committee could find

that a great many parents and others would be seriously disturbed if the petitioner were allowed to continue teaching, and that this would undermine public confidence and react unfavorably upon the school system. Considering the position of the petitioner entirely apart from any question of fault on his part and as if he had merely suffered some misfortune, such as a terribly disfiguring personal injury, the best interests of the schools are paramount, and we cannot say that the school committee exceeded its powers.

But it is argued that the action of the school committee is unconstitutional as in derogation of the privilege against self incrimination contained in the Fifth Amendment to the Constitution of the United States and consequently in violation of the due process clause of the Fourteenth Amendment and of art. 10 of the Declaration of Rights of the Constitution of this Commonwealth. See G. L. (Ter. Ed.) c. 264, §§ 16, 16A, 17, and 19, all as inserted by St. 1951, c. 805, § 3, defining "subversive organization," declaring the Communist Party to be such, and imposing punishment for becoming or remaining a member of a subversive organization, knowing it to be subversive. See further U. S. C. (1946 ed.) Sup. V, Title 18, § 2385 (the Smith act); *Jones* v. *Commonwealth*, 327 Mass. 491.

So far as this Commonwealth is concerned we think this contention is answered in principle by the epigrammatic statement of Mr. Justice Holmes speaking for this court in *McAuliffe* v. *Mayor & Aldermen of New Bedford*, 155 Mass. 216, 220, "The petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman." The same principle was applied in *Bell* v. *District Court of Holyoke*, 314 Mass. 622, where a fireman had been suspended for violation of a rule forbidding firemen, while off duty, to enter outside employment. It has been applied in other jurisdictions to sustain the attaching of consequences to the exercise by public employees of constitutional rights the exercise of which was deemed inconsistent with obligations voluntarily assumed in connection with their public employment. See for example *Christal*

v. *Police Commission of City & County of San Francisco,*
33 Cal. App. (2d) 564 (police officers: self incrimination);
*Drury* v. *Hurley,* 339 Ill. App. 33 (police officers: self incrimination); *School City of East Chicago* v. *Sigler,* 219
Ind. 9 (teacher); *Scholl* v. *Bell,* 125 Ky. 750, 795–797 (police
officers: self incrimination); *People* v. *Scannell,* 74 App.
Div. (N. Y.) 406, affirmed, 173 N. Y. 606 (fireman); *Canteline* v. *McClellan,* 282 N. Y. 166 (police officers: self incrimination); *Souder* v. *Philadelphia,* 305 Pa. 1 (police
officer); *Brownell* v. *Russell,* 76 Vt. 326 (police officer);
*Carter* v. *Thompson,* 164 Va. 312 (firemen). We think that
the cases of *In re Holland,* 377 Ill. 346, and *Matter of Grae,*
282 N. Y. 428, involving the discipline of attorneys, are
distinguishable. In the case before us the petitioner may
have a constitutional right not to incriminate himself, but
he has no constitutional right to be a public school teacher.
In view of what has already been said as to the position
and responsibilities of a school teacher at the present time
it seems to us that the inconsistency between the duty of a
teacher in the public schools and the exercise of the right
not to incriminate oneself with respect to association with
communist organizations is fully as great as in the instance
of a policeman or a fireman who asserts similar rights with
respect to other activities. In *Joyce* v. *Board of Education of Chicago,* 325 Ill. App. 543, the court held that the
right of free speech did not save a teacher from dismissal
for writing a letter to a student congratulating him on his
refusal to register for selective service. A somewhat similar
case reaching a similar conclusion is *State* v. *Turner,* 155
Fla. 270. In *Pockman* v. *Leonard,* 39 Cal. (2d) 676, a statutory requirement that a teacher take an oath that he was
not knowingly an advocate of or a member in any subversive
organization was held valid. In the very recent case of
*Daniman* v. *Board of Education of New York,* 306 N. Y. 532,
the court held that a teacher who insisted upon his right
not to incriminate himself before a Federal legislative committee with respect to communist affiliation had forfeited
his position under a provision of the city charter. Like

decisions had previously been made in lower courts of New York. *Goldway* v. *Board of Higher Education of New York,* 178 Misc. (N. Y.) 1023. *Koral* v. *Board of Education of New York,* 197 Misc. (N. Y.) 221. A very recent similar decision is found in *Board of Education of Los Angeles* v. *Wilkinson,* 125 Cal. App. (2d) 100. In a constitutional sense it seems to us to make no difference whether a teacher is dismissed because of statutory provisions expressly providing for such dismissal or, as in the present case, by an order of a public board acting within its statutory authority.

Turning next to decisions of the Supreme Court of the United States, it seems to us that the question is practically settled in the Federal field by *United Public Workers of America (C. I. O.)* v. *Mitchell,* 330 U. S. 75, 94–104, where it was held that the Hatch act in prohibiting government employees generally from exercising their constitutional rights to take an active part in political management or in political campaigns is constitutional. We do not see that the right not to incriminate oneself stands on any higher ground in a democracy than the right to take an active part in elections. But if we are wrong in this, we still are unable satisfactorily to distinguish the more recent case of *Garner* v. *Board of Public Works of Los Angeles,* 341 U. S. 716, where it was held that two municipal employees could be dismissed for refusal to disclose by affidavit whether or not they were or ever had been members of the Communist Party. If refusal to testify through affidavit can become a ground for dismissal we fail to see why refusal to testify before a duly accredited legislative committee cannot become a ground for dismissal. Other cases seeming to trend in the same direction are *American Communications Assn. C. I. O.* v. *Douds,* 339 U. S. 382, *Adler* v. *Board of Education of New York,* 342 U. S. 485, and *Orloff* v. *Willoughby,* 345 U. S. 83, 89–92. We think no proof was needed of the petitioner's knowledge that the Communist Party was a subversive organization. The school committee could find that under existing conditions the harm

was done by the mere public refusal to testify, whatever the petitioner's knowledge or lack of knowledge. The issue here does not relate to some obscure communist "front" masquerading under a virtuous name. We are prepared to say that the school committee could assume that any teacher in the higher grades who joined the Communist Party knew the nature and aims of that party in this country. No scienter seems to have been required in relation to the two petitioners in the *Garner* case who were dismissed for refusal to execute the affidavit as to whether they had ever been members of that party. And see concurring and dissenting opinion of Mr. Justice Jackson in *American Communications Assn. C. I. O.* v. *Douds*, 339 U. S. 382, 422–435, and *Galvan* v. *Press*, 347 U. S. 522.

There is in this case no question of a bill of attainder or of an ex post facto law. We confess to difficulty in considering the dismissal of a teacher for the good of the schools as a punishment of the teacher, but if it is, there has been no new legislative action purporting to affect anything previously done by the petitioner. See *Frank* v. *Mangum*, 237 U. S. 309, 344; *United States* v. *Lovett*, 328 U. S. 303, 315–318; *American Communications Assn. C. I. O.* v. *Douds*, 339 U. S. 382, 413–415; *Garner* v. *Board of Public Works of Los Angeles*, 341 U. S. 716, 721–723. The statement contained in the order of the school committee that "A teacher . . . also has a duty, implied in law, when asked by a public authority a question reflecting upon his loyalty to the United States of America, to hold himself above suspicion by meeting the question with a categorically affirmative or negative answer; and a refusal by such a teacher so to do constitutes conduct unbecoming a teacher . . ." was not the making of a rule or regulation of a legislative nature. It was no more than the expression of the committee's view for the purposes of this case that it was the duty of a teacher to avoid equivocation in matters of loyalty, and that failure in that duty would justify dismissal.

Judgment is to be entered dismissing the petition.

*So ordered.*