(No. 33149.—)
IN RE GEORGE ANASTAPLO, Petitioner.

*Opinion filed September 23, 1954.*

GEORGE ANASTAPLO, of Chicago, petitioner, *pro se.*

LEON M. DESPRES, ABNER J. MIKVA, ALEXANDER L. POLIKOFF, and BERNARD WEISBERG, all of Chicago, for American Civil Liberties Union; PEARL M. HART, of Chicago, and JESSICA DAVIDSON and ROBERT J. SILBERSTEIN, both of New York, N. Y., for National Lawyers Guild; and STEPHEN LOVE, of Chicago, *amici curiae.*

Mr. JUSTICE DAILY delivered the opinion of the court:

George Anastaplo, to whom we shall refer as petitioner, having successfully passed the Illinois bar examination, filed with the Committee on Character and Fitness for the First Appellate Court District, an application for admission to practice before the courts of this State, together with affidavits as to his good moral character and general fitness to practice law, as required by section IX of Rule 58 of this court. (Ill. Rev. Stat. 1951, chap. 110, par. 259.58.) Subsequently, and as further ordained by the rule, he appeared both before a two-man section of the committee and before the entire committee for the purpose of furnishing evidence of his moral character and good citizenship. Ultimately, on June 5, 1951, petitioner was advised that he had failed to prove such qualifications as to character and general fitness as, in the opinion of the committee, would justify his admission to the bar of Illinois. Petitioner did not seek a rehearing, as was his right, and while the committee has continued to refuse to issue him a certificate of character, it has held itself open to further suggestions and arguments of petitioner, presented through

the media of letters and one further appearance of petitioner before the committee.

Petitioner has now filed in this court what is termed a "Petition and appeal from the refusal of the Committee on Character and Fitness * * * to sign a favorable certificate for admission to the practice of law for the Applicant and Motion to the Supreme Court of Illinois to provide for the admission of the Applicant to the practice of law in the state of Illinois." Although we have held that the discretion exercised by the committee on character and fitness will not ordinarily be reviewed, (*In re Frank,* 293 Ill. 263,) and it is well established that a petition for admission to the bar, though a judicial function, is an administrative act rather than a judicial proceeding, (*In re Summers,* 325 U.S. 561, 89 L. ed. 1795,) it is our opinion, in the light of petitioner's claims that the committee abused its discretion and that certain of his constitutional rights were infringed upon, there exist circumstances which should cause us to set the matter down for argument and opinion. (*In re Summers,* 325 U.S. 561, 89 L. ed. 1795; *Brooks* v. *Laws,* 208 Fed. 2d 18.) Accordingly, petitioner has filed a brief and argument, we have granted leave to the American Civil Liberties Union and to the National Lawyers Guild, as *amici curiae,* to file briefs in petitioner's behalf and have permitted Stephen Love, a Chicago attorney and one-time committee member who apparently did not concur in its action, to file his suggestions in the cause.

Looking to the record, to the committee report to this court, and to petitioner's brief, we find that the crux of the controversy is centered upon petitioner's refusal to answer as to whether he was a member of the Communist Party or of any of the subversive organizations on the list compiled by the United States Department of Justice. When first asked if he was a member of the Communist Party petitioner responded that the question was an inquiry into his political beliefs and an "illegitimate question."

Similar responses to similar questions appear in other portions of the record of petitioner's examination and at no time did he answer the question. Predicated upon these refusals, the committee, on the basis of their opinion that a member of the Communist Party, because of such membership, might not be able in good faith to take the oath of lawyer to support the constitution of the United States and the constitution of the State of Illinois, then directed questions to petitioner designed to elicit his views in what the committee felt were pertinent areas of inquiry. Briefly summarized, as the result of the committee's questioning, petitioner expressed his opinion that a member of the Communist Party, otherwise qualified, should be admitted to the practice of law and that he could see nothing contradictory or incompatible between adherence to the tenets of that party and the taking of the oath to support the constitutions. Likewise, at this time, he expressed his belief in the doctrine of revolution and the overthrow of government by force of arms, saying that he would embrace such doctrine if he could not agree with the existing government, or found it unsatisfactory, and felt that force of arms was the only means to attain the end desired. He stated that such view would not be altered even though the existing government provided for peaceful and orderly means of change. In its report, the committee states that the views and opinions expressed by petitioner on these matters were not the basis for the denial of a certificate, but that the committee agreed such views increased the importance of petitioner's refusals to answer and made more necessary a complete answer on the subject of membership in the Communist Party, so that the committee could better determine the ability of petitioner to take the oath of attorney in good conscience and his good citizenship.

Petitioner presently contends that the committee abused its discretion and exceeded its function by inquiring into his political views, directly and indirectly, and charges that its

action in denying him a certificate stems from hostility and differences of personal opinion rather than from considerations of his lack of moral character or general fiitness to practice law. At the outset of our consideration of this point, we wish to say that we find nothing in the record to substantiate petitioner's conclusion that the committee was hostile to him or that its decision was motivated by personal opinions differing from his own. What does appear clearly is that the denial was based upon the doubts as to his ability to take the oath of lawyer in good conscience created by his refusal to answer whether he was a member of the Communist Party or other known subversive "front" organizations for that party. Thus our first consideration must be directed to whether petitioner's membership or nonmembership in the party was a relevant field of inquiry or whether the committee abused its discretion and exceeded its function.

In this jurisdiction it is firmly established that the power to regulate and define the practice of law is a prerogative of the judicial department, as one of the three divisions of the government created by article III of our constitution, an inherent adjunct of which is to prescribe regulations for the study of law and the admission of applicants for the practice of the profession. (*In re Day,* 181 Ill. 73; *People ex rel. Illinois Bar Assn.* v. *Peoples Stock Yards State Bank,* 344 Ill. 462; *People ex rel. Chicago Bar Assn.* v. *Goodman,* 366 Ill. 346.) A concomitant principle, established by the decisions of this court, is that the right to practice law is a privilege, and a license for that purpose makes the holder an officer of the court, and confers upon him the right to appear for litigants, to argue cases and collect fees therefor, and creates certain exemptions, such as from jury service and arrest on civil process while attending court. (*In re Day,* 181 Ill. 73, 80.) In the exercise of its judicial power over the bar, and in discharge of its responsibility for the choice of personnel who will

compose that bar, this court has adopted Rule 58, (Ill. Rev. Stat. 1951, chap. 110, par. 259.58,) which governs admissions and provides, among other things, that applicants shall be admitted to the practice of law by this court after satisfactory examination by the Board of Examiners and certification of approval by a Committee on Character and Fitness. Section IX of the rule provides for the creation of such committees and imposes upon them the duty to examine applicants who appear before them for moral character, general fitness to practice law and good citizenship. Still another condition precedent to admission to practice law in this State, imposed by the legislature, is the taking of an oath to support the constitution of the United States and the constitution of the State of Illinois. (Ill. Rev. Stat. 1951, chap. 13, par. 4.) We think the conclusion inescapable that the inquiry of the committee must be directed, in part, to the ability of an applicant to take the required oath in good conscience. Such an oath requires loyalty to our government, as does any concept of good citizenship, thus inquiry aimed at determining the loyalty of an applicant, must be deemed to be relevant to a determination of the conditions for admittance fixed both by the statute and by the rule of this court.

In the case of *Dennis v. United States,* 341 U.S. 494, 95 L. ed. 1137, wherein the provisions of the Smith Act directed at conspiracy to teach or advocate the overthrow of the government by violence were held to be valid, we find an authoritative characterization of the Communist conspiracy and the purposes of the Communist Party in these terms: "Their conspiracy to organize the Communist Party to teach and advocate the overthrow of the Government of the United States by force and violence created a 'clear and present danger' of an attempt to overthrow the Government by force and violence." (341 U.S. 494, at 516-517, 95 L. ed. 1137, at 1156.) Prior to that case, in *American Communications Assn. v. Douds,* 339 U.S. 382,

94 L. ed. 925, where the supreme bench upheld the constitutionality of the non-Communist affidavit provision of the Labor Management Act, we find it stated by Mr. Justice Jackson concurring in part and dissenting in part, that "the Communist Party is something different in fact from any other substantial party we have known, and hence may constitutionally be treated as something different in law." He summarizes these differences, in part, as follows: "1. The goal of the Communist Party is to seize powers of government by and for a minority rather than to acquire power through the vote of a free electorate. * * * 2. The Communist Party alone among American parties past or present is dominated and controlled by a foreign government. * * * 3. Violent and undemocratic means are the calculated and indispensable methods to attain the Communist Party's goal. * * * 5. Every member of the Communist Party is an agent to execute the Communist program." The Justice states that from such data "Congress could rationally conclude that, behind its political facade, the Communist Party is a conspiratorical and revolutionary junta, organized to reach ends and to use methods which are incompatible with our constitutional system." (339 U.S. 382, at 424, 94 L. ed. 925, at 957.) And we observe that such a conclusion has been explicitly expressed by Congress in the recently enacted "Communist Control Act of 1954." In the preamble of such act, it is stated that "The Congress hereby finds and declares that the Communist Party of the United States, although purportedly a political party, is in fact an instrumentality of a conspiracy to overthrow the Government of the United States. It constitutes an authoritarian dictatorship within a republic, demanding for itself rights and privileges accorded to political parties, but denying to all others the liberties guaranteed by the Constitution." Similarly, courts of our sister States have recognized and agreed that the Communist Party is subversive and constitutes a continuing conspiracy against our gov-

478

ernment. (*Board of Education* v. *Wilkinson*, 125 Cal. App. 2d 127, 270 Pac. 2d 82; *Daniman* v. *Board of Education*, 306 N.Y. 532, 119 N.E. 2d 373; *Faxon* v. *School Committee of Boston*, (Mass.) 120 N.E. 2d 772.) In still another instance a Canadian court has stated categorically that a person subscribing to the Marxist philosophy is not a proper person to practice law. In *Martin* v. *Law Society of British Columbia*, 3 Dominion Law Reports 173 (1950) it is said: "The Marxist philosophy of law and government in its essence is so inimical in theory and practice to our constitutional system and free society that a person professing them is *io ipso* not a fit and proper person to practice law." Quite apart from these manifestations by the judiciary, we also think, to borrow a phrase from the *Faxon case,* it is a matter of common knowledge that "multitudes of people * * * regard with abhorrence the Communist Party and communism as that term is generally understood." This thought of our people is becoming more and more evident and is reflected in the increasing efforts of their elected representatives to legislate both against the growth and the very existence of the Communist Party in our land.

Neither the committee nor this court, faced with the question of whether membership in the Communist Party is relevant to a determination of petitioner's good citizenship and his ability to take the oath of lawyer in good conscience, need be oblivious to the existence of that party and its established conspiratorial nature, nor to the view in which it is held by the people of this country. Aside from the fact that membership in an organization advocating the forceful overthrow of our government would give rise to questions concerning the sincerity of an applicant's oath of loyalty, it is proper to consider that the lawyer, as an officer of the court, holds a position of public trust, or at least of semipublic trust. As is stated in *In re Both*, 376 Ill. 177, 182: "Attorneys at law admitted to the bar of this State are officers of this court. * * *

The relation of the court and its attorneys to the people is one of high responsibility, involving on the one hand complete trust and confidence and on the other absolute fidelity and integrity." Because of his training and the trust and confidence reposed in him, the lawyer is presented with extensive opportunity to impress his attitudes and views on the public and to effect the translation of those views into legislative action, for the legal profession, more than others, is looked to for political leadership and is expected to institute and guide legislative change. There also comes from the profession the judiciary which interprets the laws and, undoubtedly to a greater degree than from other professions, the legislators who enact and draft our laws and the men and women who administer them. Considering these functions of the lawyer, along with his position of being an officer of this court in whom public trust and confidence is reposed, this court, or its committees, would be derelict in their responsibility to the public, if, knowing of the Communist Party and its insidious aims, we stood mutely by and made no effort to thwart, or inquire into, its infiltration into the bar of this State. As one court has put it: "In the life-and-death struggle into which our people have been plunged by the monstrous conspiracy called communism, it is becoming more and more apparent that it is essential for the continuance of our national life that we know who is for us and who is against us. This is no time to allow any person who would destroy us, our liberties, our religious convictions, and our government to be employed in any branch of that government, * * *." (*Board of Education* v. *Wilkinson,* 125 Cal. App. 2d 127, 270 Pac. 2d 82, 86.) While technically not a governmental employee, a lawyer meets on common ground with one so employed, in that loyalty to the constitution is an inalienable condition to their service. In either case, Communist Party membership or communist activity is totally incompatible with such loyalty.

It is our opinion, therefore, that a member of the Communist Party may, because of such membership, be unable truthfully and in good conscience to take the oath required as a condition for admission to practice, and we hold that it is relevant to inquire of an applicant as to his membership in that party. A negative answer to the question, if accepted as true, would end the inquiry on the point. If the truthfulness of a negative answer were doubted, further questions and information to test the veracity of the applicant would be proper. If an affirmative answer were received, further inquiry into the applicant's innocence or knowledge as to the subversive nature of the organization would be relevant. Under any hypothesis, therefore, questions as to membership in the Communist Party or known subversive "front" organizations were relevant to the inquiry into petitioner's fitness for admission to the bar. His refusal to answer has prevented the committee from inquiring fully into his general fitness and good citizenship and justifies their refusal to issue a certificate.

We are next met, however, by petitioner's contention that inquiries about his "political affiliations and organizational memberships" are unconstitutional, as being in derogation of the right to free speech guaranteed under the first and fourteenth amendments to the constitution of the United States. Though petitioner argues forcefully and at great length, it is our impression and interpretation that *American Communications Ass'n* v. *Douds,* 339 U.S. 382, 94 L. ed. 925, and *Dennis* v. *United States,* 341 U.S. 494, 95 L. ed. 1137, authoritatively establish that such an inquiry, under the circumstances presented, does not violate the constitutional mandate relied upon. The rationale of both cases is that belief in the overthrow of the government by force, in the face of the reality that beliefs are the springs to action, is a substantial enough interest to limit speech. They both say, that while one may be per-

mitted to advocate and believe what he will, there is a clear and present danger in the Communist conspiracy from which a public evil will result, and from which the public has a right to be protected even though the constitutional right of free speech of some persons or groups are in some manner infringed. If this were not enough to refute the petitioner's claim, it is also stated in the *Douds case* (339 U.S. 382, 398, 94 L. ed. 925, 943-944,) that government's "interest in the character of members of the bar, *Re Summers,* 325 U.S. 561, 89 L. ed. 1795, 65 S. Ct. 1307 (1945), sometimes admit of limitations upon rights set out in the First Amendment."

In the *Summers case* an applicant for admission to the bar of this State was denied admittance, though otherwise qualified, on the sole ground that he had conscientious scruples against war and would not use force to prevent wrong under any circumstances. The Supreme Court of the United States upheld our refusal and expressly held that our action did not violate the first amendment, as its demands are incorporated in the due-process clause of the fourteenth amendment. In analyzing the *Summers* decision during the course of the *Douds* opinion, the court said: "Again, the relation between the obligations of membership in the bar and service required by the state in time of war, the limited effect of the state's holding upon speech and assembly, and the strong interest which every state court has in the persons who become officers of the court were thought sufficient to justify the state action." (339 U.S. 382, 405, 94 L. ed. 925, 947.) We see no substantial difference, or basis for a different application of the limitations on the right of free speech, between an inquiry into Summers' belief that he would not bear arms in support of his government and an inquiry, where the existence of a clear and present danger is known, directed to petitioner's membership in an organization which advocates the overthrow of the same government, by force of arms if neces-

sary. Measured by popular belief and opinion, we think that one who would embrace a movement to overthrow our government by force of arms is relatively more unqualified to fulfill his obligations as a lawyer than is a person who, because of conscientious scruples, would not use force of arms to prevent wrong. The latter admits of some loyalty to his government, the former, none.

Further, in regard to the contention that petitioner's right of free speech has been infringed upon by the inquiries of the committee, we may also consider the established principle of this jurisdiction that the practice of law is a privilege, not a right. In granting that privilege we may impose any reasonable conditions within our control and if an applicant does not choose to abide by such conditions he is free to retain his beliefs and go elsewhere. Among other things, the granting of the privilege to practice law in this State is conditioned upon proof by the applicant of his good moral character, of his general fitness to practice law and of his good citizenship, and upon the taking of an oath to support the State and Federal constitutions. Such conditions are almost universal in this land and, so far as we can ascertain, their reasonableness has never been attacked. When an applicant, knowing of such conditions, applies for admission and signifies that he will take the oath of lawyer, we think it inconsistent with the privilege he seeks that he should be permitted to defeat pertinent inquiry into his ability to fulfill such conditions by any claim of the right of free speech. This has been the principle applied in the field of public employment to sustain a finding that such employees agree to suspend their constitutional rights of free speech by the implied terms of their employment, (See: *McAuliffe* v. *City of New Bedford,* 155 Mass. 216, 29 N.E. 517; *Drury* v. *Hurley,* 339 Ill. App. 33, 88 N.E. 2d 728; *Joyce* v. *Board of Education,* 325 Ill. App. 543, 60 N.E. 2d 431; *Faxon* v. *School Committee of Boston,* (Mass.) 120 N.E.

2d 772; *Daniman* v. *Board of Education,* 306 N.Y. 532, 119 N.E. 2d 373,) and we think it has equal application here. In seeking the privilege of admission before this court, petitioner must be deemed to have agreed to waive his constitutional right of free speech against relevant inquiry.

We conclude that the committee's inquiry into petitioner's membership in the Communist Party was relevant to a determination of his good citizenship and his ability to take the oath of lawyer in good conscience, and that petitioner's constitutional rights were not infringed upon by such action. On the present record the petition must be denied.

*Petition denied.*