**UNITED ELECTRICAL RADIO AND MACHINE WORKERS OF AMER-ICA et al., Plaintiffs,**

v.

**GENERAL ELECTRIC COMPANY, Defendant.**

Civ. A. No. 1037-54.

United States District Court, District of Columbia.

Dec. 30, 1954.

David Scribner, Arthur Kinoy, New York City, Basil Pollitt, Brooklyn, N.

Y., Forer & Rein, Washington, D. C., for plaintiffs.

Gerhard A. Gesell, Burke Marshall, of Covington & Burling, Washington, D. C., W. J. Barron, New York City, for defendant.

McLAUGHLIN, District Judge.

Plaintiffs in this action seek a declaratory judgment, injunctive relief and damages.

The basis of the plaintiffs' claim for relief is the discharge from employment of the individual plaintiff Nelson in accordance with defendant Company's statement of "Policy concerning Admitted Communists, Saboteurs, and Subversives; and Employees who Invoke the Fifth Amendment in Order to Refuse to Testify on such Subject."

Jurisdiction of the Court is invoked under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185; 42 U.S.C.A. §§ 1983, 1985(3), the Civil Rights Act; and 18 U.S.C. § 241, the section dealing with conspiracy against the rights of citizens.

On September 15, 1950, the defendant General Electric Company, hereinafter referred to as defendant Company, entered into a collective bargaining agreement with the United Electrical Radio and Machine Workers of America, hereinafter referred to as the Union. This agreement as amended on June 19, 1953, is presently in full force and effect and according to its terms will continue in full force and effect until at least April 15, 1955.

In accordance with Article I of this agreement the defendant Company agreed to recognize the Union as the exclusive bargaining representative of its employees covered by said contract with respect to rates of pay, wages, hours of employment and other conditions of employment.

Defendant Company on December 9, 1953, issued the statement of policy, which forms the basis of this action. This policy provides for the immediate discharge of admitted Communists and saboteurs. It further provides that any employee who has been identified as a Communist by testimony under oath at a public hearing of a Congressional Committee or other government authority and who thereafter has declined to accept an opportunity to testify under oath before such committee or authority or has invoked the Fifth Amendment in refusing to testify concerning Communist affiliations, espionage or sabotage, shall be suspended for a period of 90 days without loss of pay. The penalty is to be imposed on any employee who had pursued either of these courses within the previous six-month period. It further provides that an employee who has been suspended can be reinstated (1) if within the 90-day suspension period he appears before the Congressional Committee or authority and fully answers under oath all questions asked him pertaining to Communist affiliations, espionage or sabotage, and in the course thereof does not admit being a Communist or being engaged in espionage or sabotage; or (2) if he obtains from an accredited security agency of the United States and furnishes to the Company a certificate or statement that an investigation of the employee had been conducted by the agency and that no evidence was found to indicate that the employee was a Communist or otherwise a risk for employment in an industry essential to national defense. It also provides that if an employee is not entitled to reinstatement in accordance with the above provisions at the end of the 90-day period, he shall be discharged.

The plaintiff Nelson is the President of Local 306 of the Union located at Erie, Pennsylvania. This local represents the employees at the Company's Erie plant. On November 12, 1953, Nelson had appeared before a subcommittee of the Senate Judiciary Committee in response to a subpoena. At this hearing Nelson invoked the Constitutional privilege of the Fifth Amendment in answer to several questions. Two days after the promulgation of the Company's policy, on December 11, 1953, the plaintiff Nelson was sus-

pended for 90 days according to the provisions of the policy. At the end of the 90-day period of suspension he was discharged since he had not qualified for reinstatement in accordance with the terms of the policy statement.

This action was instituted as a result of the discharge of plaintiff Nelson. The remedies prayed for are:

1. By the plaintiff Union—a declaratory judgment that the statement of policy is a violation of the collective bargaining agreement between the Union and the defendant Company.

2. By plaintiff Nelson—an injunction ordering defendant to refrain from discharging him; an order rescinding his notice of suspension and restoring his full seniority rights; an order directing defendant to refrain from discharging any and all other employees similarly situated under the provisions of the statement of policy; a declaratory judgment that the suspension and threatened discharge is illegal; damages in an amount of $50,000; damages to all other employees similarly situated in amounts to be determined by the Court.

According to Article I of the collective bargaining agreement the Union is designated as the exclusive bargaining representative with respect to "conditions of employment".

It is plaintiffs' contention that the statement of policy constituted a new condition of employment and that it should have been negotiated with the Union in accordance with the agreement. Plaintiffs allege that the failure to submit the policy statement to the Union for bargaining constituted a breach of the agreement.

Defendant contends that there is no condition of employment involved but rather the question of discharge. It argues that the right to discharge is an inherent right of an employer and that it has always reserved this right in its agreements with the Union. It further contends that there is no obligation to notify the Union before hand of the bases for discharge and, consequently, that

there has been no violation of the collective bargaining agreement.

The questions posed by these respective contentions rest for determination upon the meaning and effect of the provisions of the contract relied on respectively by the parties, which meaning and effect in turn, rest upon the intention of the parties. In the statement of issues made during the trial of the case the above basis for determination of meaning and effect of the contract was agreed upon by counsel for the parties. (Record 18–19, 66.)

This action was previously before another branch of this Court on a motion to dismiss. In a memorandum opinion denying that motion it was stated:

"The court does not dispute the defendants' contention that there is an inherent right on the part of the General Electric Company to employ and discharge. The question, however, before the Court at the present time is whether the Defendant Company has bargained away any of its inherent rights by its employment agreement with the plaintiff union. * * * "

An employer's right to employ and discharge whom he pleases, in the absence of any statutory or contractual provision is unquestioned. As the Court of Appeals, 10th Circuit, said in Odell v. Humble Oil & Refining Co., 201 F.2d 123, 128, certiorari denied 345 U.S. 941, 942, 73 S.Ct. 833, 97 L.Ed. 1367.

"It is the universally recognized rule that in the absence of a contract or statutory provisions an employer may discharge an employee without cause or reason or for any cause or reason. * * * (Citing cases.)"

In speaking of the effect of the National Labor Relations Act upon the right of the employer to discharge, the Court in N. L. R. B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, at pages 45–46, 57 S.Ct. 615, at page 628, 81 L.Ed. 893, said:

"The act does not interfere with the normal exercise of the right of the employer to select its employees

**938**

or to discharge them. The employer may not, under cover of that right, intimidate or coerce its employees with respect to their self-organization and representation, and, on the other hand, the Board is not entitled to make its authority a pretext for interference with the right of discharge when that right is exercised for other reasons than such intimidation and coercion. * * * ”

In the Labor Management Relations Act of 1947, 29 U.S.C.A. § 141 et seq. the right of the employer to discharge for cause was specifically preserved by a provision in Section 10(c), 29 U.S.C.A. § 160(c) to the effect that

“ * * * No order of the Board shall require the reinstatement of any individual as an employee who has been suspended or discharged, or the payment to him of any back pay, if such individual was suspended or discharged for cause. * * * ”

█ The basic question involved in this action then appears to be whether the defendant bargained away its inherent right of discharging its employees when it executed the collective bargaining agreement.

█ The answer to this question rests upon an interpretation of the agreement. In Victory Investment Corporation v. Muskogee Electric Traction Co., 10 Cir., 150 F.2d 889, at page 893, 161 A.L.R. 1436, the rule is announced as follows:

“The cardinal rule in the interpretation of contracts is to ascertain the mutual intention of the parties

at the time their minds met upon the terms of the agreement and to give effect to that intention if it can be done without doing violence to the language used.”

See also Bradley v. Washington, Alexandria & Georgetown Steam-Packet Co., 13 Pet. 89, 97, 38 U.S. 89, 97, 10 L.Ed. 72.

Accordingly the Court must determine what these parties intended at the time they executed the agreement. If it appears that they intended that the discharge of employees covered by the contract should be subject to review by some third party, either by a court or by arbitrator, then the discharge of plaintiff Nelson constitutes a violation of the agreement. If it appears, however, that it was intended that the Company reserved the right to discharge employees and merely agreed that thereafter such discharge should be made the subject of discussion and of bargaining through the grievance mechanism set up in the contract and that determinations arrived at through the operation of that mechanism would be final, then the discharges in question would not violate the agreement, if discussion and bargaining ensued.

There are three sections of the agreement which are immediately involved in the determination of the question as to what the parties intended with regard to discharges. The pertinent sections are Article I(1)[1] regarding Union recognition, Article XV(3) (a)[2] relating to the procedure for disciplinary cases, and Article XVI(1)[3] relating to arbitration.

1. “1. The Company agrees to recognize the Union on behalf of and in conjunction with its Locals for those bargaining units of Company employees for which the Union or any of its Locals, through National Labor Relations Board certifications, is designated as the exclusive collective bargaining representative of employees within such units for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment and other conditions of employment.”

2. “(a) Before any penalty is imposed upon any employee following Warning Notices,

except for discharge for obvious cause, such employee shall be notified one week in advance during which time he may refer the matter to the Local representative and if the Local so desires, the matter may be negotiated with the Management. If no satisfactory agreement is worked out during the period of such notice, the Management shall retain the right to impose such penalty pending final settlement of the case.”

3. “1. Any grievance which involves the interpretation or application of this Agreement, and which remains unsettled

Article XV(3) (a) sets out the rights of the parties with respect to disciplinary discharges. It provides that an employee is entitled to a warning notice and then to a notification one week in advance of any penalty discharge, "except for discharge for obvious cause." The defendant Company by the terms of this section has thus been restricted in its right to discharge but has reserved the right to discharge immediately for "obvious cause."

The agreement does not contain a definition of the term "obvious cause" as used in Article XV(3) (a). The record discloses however (Transcript, pp. 448–451) that the term was inserted in the agreement at the instance of the defendant as a protection of its right to discharge those employees whom it considered undesirable and therefore who should be immediately removed from the plant. The record further discloses (Transcript, pp. 429–434) that offenses for which an employee would be subject to immediate discharge were determined by the Company without prior notice to the Union. An instruction sheet from the Erie Works of the defendant Company (Defendant's Exhibit No. 5) sets out several grounds as bases for immediate discharge, among which are: wilful insubordination, theft, drunkenness, immoral behavior and wilful destruction of company property. It appears that in the issuance of this instruction sheet at least, the Company determined the grounds for immediate discharge, and that it did not consult the Union in advance of such determination (Transcript, p. 510). From the foregoing the Court is of the opinion that the conclusion may reasonably be drawn that the Company has taken the position that it would hear Union protests through the grievance mechanism after the discharge had been effected and the Union had been advised of this position.

In view of defendant's right to discharge for obvious cause and the practice that it determined unilaterally what constitued the basis for such a discharge, the Court must determine whether the invocation of the Fifth Amendment privilege by the discharged employees presented such a situation as would justify defendant in immediately discharging them.

According to defendant, "obvious cause" was intended to cover "those things which in the opinion of management made an employee an undesirable employee and therefore one who should be immediately removed from the plant" (Transcript, p. 488). There was testimony that defendant was criticized by its stockholders and customers after its employees had relied upon their Fifth Amendment privilege before Congressional Committees. There was also evidence of unrest among fellow employees, and in one instance of refusal to work on the same job with one of the employees who had refused to testify regarding his Communist affiliations. (Defendant's Exhibits 16 and 17.) It appears to the Court that the threatened loss of good will, displeasure of stockholders and prospective customers, disruption of plant morale and the grave doubts as to the security of employees and its plants, all resulting from the refusal of its employees to testify before Congressional Committees, justified defendant in immediately discharging such employees for obvious cause.

The plaintiffs have argued that the evidence of dissension and impaired morale among fellow employees has no bearing on this proceeding since the individual involved in the only instance cited by defendant was employed at a different plant and was not a member of the plaintiff Union. The Court is of the opinion, however, that evidence of the effects above outlined produced by the refusal of any of the employees of defendant Company

after having been fully processed pursuant to the provisions of Article XV shall be submitted to arbitration upon request of either the Union or the Company provided such request is made with-

in 90 days after the decision of the Company has been given to the Union pursuant to Article XV, Section 1(c).
* * *

to testify, in violation of the interdiction contained in the Company's statement of policy, regardless of plant location or union membership, has a bearing upon the matter of defendant's designation of the offense in question as a ground for immediate discharge and so should be considered.

■ The next section of the agreement which is involved in the determination of intention is Article I(1). Plaintiffs contend that the statement of policy comes within the meaning of the term "other conditions of employment" as used in that Article and that it should have been negotiated with the Union before being put into effect. Article XV(3) (a) recognizes the right of defendant to discharge for disciplinary reasons and sets out in specific detail the procedure relating to the handling of such discharges. In view of this fact the Court is not persuaded that it was intended by the parties to the agreement that the term "other conditions of employment" as used in Article I(1) should negate the right of the defendant to discharge in accordance with Article XV(3) (a).

■ Plaintiffs contend that they were entitled to discussions and negotiation with respect to the question of the propriety or the justifiability of discharges under the statement of policy. The Court recognizes that in the usual disciplinary discharge, i. e. for theft, drunkenness, etc., sometimes there are many circumstances to be considered, e. g. guilt or innocence of the act charged; work record; restitution; promise to refrain from such conduct, and that a consideration of these items sometimes leads to a determination that the discharge was wrongly imposed or that a lesser penalty would be commensurate with the offense. In the instant case, however, the Court is not persuaded that discussion and negotiation would serve any useful purpose.

Following the publication by defendant of the statement of policy, meetings were held between representatives of defendant Company and of the Union at which discussions were had with reference to said statements. In none of the discussions, so far as the record discloses, did the Union challenge the fact that Company employees had invoked the Fifth Amendment in refusing to answer questions before Congressional Committees. At no place in the Union's briefs in support of its position or in argument of counsel for the Union has such a challenge been made. The thrust of the Union's argument is against the Company right, in the circumstances, to discharge an employee who admittedly has thus invoked the Fifth Amendment. Nor in the Court's opinion, in the circumstances, is there cogency in the suggestion that consideration of the work record of the affected employee would be material; or of a promise on his part to refrain from such conduct; or of the imposition of a penalty of lesser degree than suspension and, if applicable, of discharge. As stated elsewhere in this opinion, opportunity was provided by the statement of policy for any employee who had refused to answer questions behind the shield of the Fifth Amendment to relieve himself from the effects of the operation of its discharge provisions by appearing before the pertinent Committee and answering the questions under oath as outlined in the statement of policy or obtaining security clearance.

■ The complaint of the Union concerning the above discussions is that the Company refused to negotiate. The record (Transcript, pp. 101, 160, 613) establishes that the Union asked that the defendant Company recede from its position as set forth in the statement of policy. The Court has not been persuaded that it has been demonstrated that the defendant Company refused to negotiate. The invoking of the Fifth Amendment by employees being admitted, there remained only the question or point of whether defendant Company would adhere to or abandon its position. The discussion of that question or point took place. In the Court's opinion that, in the circumstances, constituted negotiation. Indeed the situation raises the question "What further negotiations

could take place?" The invoking of the Fifth Amendment by employees had produced the results, elsewhere referred to herein, which were harmful and damaging to the Company. Unlike other offenses or derelictions, the effects of which upon the Company might have been erased or ameliorated by negotiations resulting in the taking of a position by the Company that the offending employee should, in the circumstances, be penalized in a manner less drastic than discharge or be given another chance without immediate penalty, the invoking of the Fifth Amendment was a step which once taken produced the harmful effects complained of, which effects the Company concluded could not be erased or ameliorated without the pursuing of the course left open to the employee so invoking the Amendment in accordance with the provisions of the statement of policy.

Article XVI(1) of the agreement, dealing with arbitration, is the third section of the agreement which is immediately involved in the determination. It is contended by the plaintiff that the discharge under the statement of policy should have been submitted to arbitration in accordance with that section of the collective bargaining agreement. It appears from the record (Transcript, pp. 461–465) that the arbitrability of discharges was discussed by the parties during several negotiations but that no agreement was ever reached on the point. In view of the disagreement on this point the Court is unable to conclude that it was intended to subject discharges to arbitration.

The plaintiffs claim that there has been a deprivation of the Fifth Amendment rights of those employees discharged as a result of invoking the privilege. There is no claim that the employees were not permitted to invoke the privilege but rather that their discharge because of their reliance upon the privilege violated a constitutional right. The defendant, on the other hand, claims that the protection of the Fifth Amendment does not extend that far. It contends that once a person relies upon the privilege his constitutional guarantee has been fulfilled and he is not entitled to protection from loss of employment.

While discharges as a result of relying upon the Fifth Amendment present a novel question in the field of private employment there appears to be considerable authority for discharging governmental employees, both Federal and Municipal, for such action.

The Federal Employees Security Program provides that "Refusal by the individual, upon the ground of constitutional privilege against self-incrimination, to testify before a congressional committee regarding charges of his alleged disloyalty or other misconduct" is a factor to be considered in the security investigations of Federal employees, Ex. Ord. 10491, 5 U.S.C.A. § 631 note, 18 F.R. 6583.

In Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842, the Supreme Court held that invocation of the Fifth Amendment by a doctor in answer to questions regarding membership in subversive organizations was a sufficient ground for denying him a commission in the Army Medical Corps. In Shlakman v. Board of Higher Education, 282 App. Div. 718, 122 N.Y.S.2d 286, affirmed 306 N.Y. 532, 119 N.E.2d 373, it was held that teachers in municipal colleges in New York City were properly discharged under a City Charter provision, as a result of their having invoked the Fifth Amendment in answer to questions regarding present or past membership in the Communist Party. It was held that the Charter provision, which provided for discharge in the case of City employees who invoked the Fifth Amendment, did not abridge the constitutional privilege against self-incrimination. In Christal v. Police Commission of San Francisco, 33 Cal.App.2d 564, 92 P.2d 416, where police officers had been dismissed as a result of their reliance upon the Fifth Amendment privilege, it was held that while the officers had a constitutional right to refuse to answer questions regarding bribes or gratuities, they had no constitutional right to remain police

officers in the face of this violation of their duty.

Although the persons involved in the cases cited were all in government service of one type or another the Court is not persuaded that a person relinquishes any of his Constitutional rights by virtue of his entry into public service.

■■■ The Fifth Amendment guarantee provides " * * * nor shall any person * * * be compelled in any criminal case to be a witness against himself * * *." This Amendment does not guarantee that a person who invokes it will not be subject to any unfavorable inference. Maffie v. United States, 1 Cir., 209 F.2d 225, 228. The Court concludes that it likewise does not guarantee that the person invoking it shall be continued in his employment. In view of this the Court holds, that the discharge of the employees under the Statement of Policy did not constitute an interference with their Constitutional rights.

■■■ Plaintiffs assert and rely upon the proposition that in entering into the collective bargaining agreement, the parties thereto; i. e. the Union and the Company, agreed that the Company had bargained away its right to discharge employees, in that its right to discharge was no longer unqualified but subject to all the conditions to which conditions of employment were subjected by the provisions of that agreement. It is elementary in an action that the party asserting a proposition has the burden of proof of establishing it. The Court is unable to conclude from the evidence that the plaintiffs have met this burden of proof. The Court thus finds that it was not the intention of the parties at the time they executed the agreement that defendant Company's right to discharge for obvious cause should be impaired by the collective bargaining agreement.

■■■ The Court further finds that discharges under the statement of policy were discharges for obvious cause; that the parties did not intend that the discharge of employees covered by the contract should be subject to review by any third party, either Court or arbitrator; that since defendant retained the right to discharge for obvious cause it was not obligated to negotiate with the Union before discharging a person on that ground; that there was no violation of the collective bargaining agreement when the discharge in question was not negotiated with the Union in advance of the issuance of the statement of policy.

■■■ In addition to their contentions concerning questions involving the contract, the plaintiffs have also charged that defendant, through its management and officers, conspired with members of the staff of the permanent Subcommittee on Investigation of the Senate Government Operations Committee to deprive the individual plaintiff of his civil rights. It is likewise elementary that the plaintiff in a civil conspiracy case has the burden of proving the existence of the conspiracy which it alleges to exist. Upon a consideration of the entire record in this case the Court finds that the plaintiffs have failed to sustain the burden of proving the alleged conspiracy.

For the reasons indicated, the prayers of plaintiffs' complaint are denied.

Counsel for defendant will prepare appropriate findings of fact, conclusions of law and order.