John W. NELSON, Appellant,

v.

GENERAL ELECTRIC COMPANY, Appellee.

No. 2225.

Municipal Court of Appeals for the District of Columbia.

Argued July 28, 1958.

Decided Nov. 12, 1958.

Frank J. Donner, New York City, of the New York Bar, pro hac vice, by special leave of Court, with whom Joseph Forer, Washington, D. C., was on the brief, for appellant.

Gerhard A. Gesell, Washington, D. C., with whom David B. Isbell, Washington, D. C., was on the brief, for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

Appellant is president of Local 506 of the United Electrical, Radio and Machine Workers of America, located at Erie, Pennsylvania. This union is the certified bargaining representative for appellee's employees working in its Erie plant. On December 9, 1953, appellee adopted a "policy" which declared in part that any of its employees who invoked the Fifth Amendment before a congressional committee and refused to testify concerning various communist activities would be subject to suspension and discharge. Appellant, an employee of appellee at that time, invoked the Fifth Amendment before a committee of Congress and was suspended in December 1953. Ninety days later he was discharged in accordance with the "policy."

Contending that this discharge was a violation of the collective bargaining agreement then in effect between appellee and the union, both appellant and the union brought suit against appellee in the United States District Court for the District of Columbia seeking declaratory and injunctive relief and damages. After a full trial the court found for appellee on the merits.[1] On appeal, the United States Court of Appeals for the District of Columbia Circuit ruled that the district court had no jurisdiction of any claims the union might have against appellee.[2] As for appellant's individual claim, the court stated:

"An employee discharged in violation of a collective bargaining contract may have a claim that is judicially enforceable. Marranzano v. Riggs National Bank, 1950, 87 U.S.App.D.C. 195, 184 F.2d 349. But the claim is not enforceable in the United States District Court for the District of Columbia unless the amount in controversy exceeds $3,000. Smaller claims are within the exclusive jurisdiction of the Municipal Court for the District of Columbia. D.C.Code (1951) § 11–755. Appellant Nelson's claim does not meet the District Court's jurisdictional requirement. During the last full year of his employment by the Company, most of his time was spent on Union work for which he was not paid or entitled to be paid by the Company, and his earnings from the Company were $618.51. It does not appear that his Company employment and earnings would have been larger in the future, or that his Company discharge affected his Union employment and earnings. Cf. Friedman v. International Ass'n of Machinists, 95 U.S.App.D.C. 128, 220 F. 2d 808. * * *"[3]

The Supreme Court denied certiorari.[4]

Appellant then brought this suit in the Municipal Court asking damages for breach of contract and restoration by way of injunction to his former position. At the conclusion of his evidence the trial court, sitting without a jury, granted appellee's mo-

1. United Electrical, Radio & Machine Workers of America v. General Electric Co., D.C.D.C.1954, 127 F.Supp. 934.

2. United Electrical, Radio & Mach. Workers of America v. General Electric Co., 1956, 97 U.S.App.D.C. 306, 308, 231 F. 2d 259, 261.

3. 97 U.S.App.D.C. at page 308, 231 F.2d at page 261. The court affirmed the lower court's dismissal of a conspiracy charge as unproved.

4. United Electrical, Radio, and Machine Workers of America v. General Electric Company, 1956, 352 U.S. 872, 77 S.Ct. 95, 1 L.Ed.2d 76.

tion to dismiss the action and this appeal followed.

The settled rule is that an employer has the right to select or discharge his employees at will, unless that right has been restricted by the specific contract of employment or by legislation.[5] There is no statute applicable to the instant case which has had such an effect. Accordingly, relying on this general principle, appellee attempted to justify its dismissal of appellant on two alternative grounds: (1) that the collective bargaining agreement contained no limitation on its general right to discharge; (2) even if its right was restricted by the contract, invocation of the Fifth Amendment before a congressional committee was a ground for discharge embraced by the terms of the limitation.

The typical contract provision limiting an employer's right to discharge recites that no employee may be discharged except for "cause," or "proper cause," or "just cause." Since no such explicit term appears in the collective bargaining agreement in force at the time of appellant's dismissal, appellee urges that its right to discharge was unlimited. Appellant contends that a "cause" provision is necessarily implied in this contract by virtue of the following clause:

"Article XV

Grievance Procedure

\*   \*   \*   \*   \*   \*

"3. *Procedure for Disciplinary Cases*

(a) Before any penalty is imposed upon any employee following Warning Notices, except for discharge for obvious cause, such employee shall be notified one week in advance during which time he may refer the matter to the Local representative and, if the Local so desires, the matter may be negotiated with the Management. If no satisfactory agreement is worked out

during the period of such notice, the Management shall retain the right to impose such penalty pending final settlement of the case.

"(b) In the event it is determined that an employee has been improperly penalized, he will be reimbursed for any loss of wages sustained as a result of the imposition of the penalty."

Appellee reads this provision as procedural only, imposing no substantive limits on its right to discharge. On the other hand, appellant argues that the words "negotiated" and "settlement" presuppose a limit on the power to discharge; that the phrase "improperly penalized" contemplates that a discharge can be predicated only on "proper cause."

In a memorandum opinion the trial judge took the position that this disputed clause in no way restricted appellee's right to discharge. The court interpreted Section 3(a) as meaning only that in any discharge the employee is entitled to a week's notice, except discharge for "obvious cause," in which case he receives no notice. The court also felt that the phrase "improperly penalized" in Section 3(b) was meant to apply only to situations in which the employer discharged an employee because of a mistake as to the facts, and that determination of the propriety of the reason for discharge was left to the sole discretion of appellee.

It is apparent that Article XV, Section 3 is ambiguous. We do not think it can possibly be said that any one of these interpretations is plainly demanded as a matter of law. It becomes necessary, therefore, to ascertain the proper meaning of this clause; and the nature of this inquiry, within the bounds of the accepted standards of interpretation, is to a considerable extent factual. In view of this point, we might consider ourselves bound by the trial court's interpretation of Article XV, Sec-

---

5. United States Steel Corporation v. Nichols, 6 Cir., 229 F.2d 396, 56 A.L.R.2d 980,    certiorari denied 1956, 351 U.S. 950, 76 S.Ct. 846, 100 L.Ed. 1474.

tion 3 but for the existence of another circumstance, which forms the basis for appellant's principal contention on appeal: the exclusion by the court of certain evidence offered by him bearing on this question.

As Wigmore has pointed out, the general principle of interpretation is that "all the circumstances must be considered which go to make clear the sense of the words *. * *."[6] The collective bargaining agreement, which appellant alleged his discharge has violated, was entered into in 1953. Appellant attempted to show that this contract was the successor of a series of previous contracts between the union and appellee extending back to 1945, each of which contained verbatim the language of Article XV, Section 3 of the 1953 agreement. He offered in evidence the award of an arbitrator, made in 1948, in a case unrelated to the instant one, in which the arbitrator in effect construed the passage in question as placing a limitation on appellee's right to discharge. Both the arbitrator's award and the evidence concerning the previous contracts were rejected by the court. We think this evidence was relevant. The fact that the parties, in the face of this decision, continued to incorporate the same language in their subsequent contracts without any changes tends to show, though not conclusively, that they regarded this language as adequate to express their agreement, and that this arbitrator's ruling did in fact represent their agreement. Appellee asserts that it did not accept the arbitration decision, but this circumstance cannot wholly overcome the probative value of the award, because appellee still assented to the reincorporation of the disputed language in the succeeding contracts. The resolution of these conflicting factual arguments, and the weight to be given them, are primarily for the trier of the facts, but this entire line of proof was foreclosed by the court's rulings. We are of the opinion that the exclusion of this evidence was erroneous.

■ . Similarly, the court excluded testimony offered by appellant to show the treatment accorded other discharge cases prior to the promulgation of the "policy," and the factors and circumstances considered. Apparently, this evidence would have tended to show that the parties did not feel that appellee possessed an unrestricted right to dismiss its employees at will but that there was something to negotiate. This evidence also was relevant and should have been admitted.

■ It is our conclusion that the erroneous exclusion of this evidence bearing on the threshold issue of whether the collective bargaining agreement limited appellee's right to discharge was highly prejudicial and requires reversal by us. As we have indicated, the proper interpretation of this contract is to a large extent a factual problem, and we cannot say what findings the court would have made if it had given proper consideration to this relevant evidence. Consequently there must be a new trial.[7]

■ Appellee argues that the judgment can be sustained on the ground that appellant failed to prove any damages. We cannot agree. Appellant's evidence disclosed that, although he was only a part-time worker, he earned in the twelve-month period preceding his suspension the sum of $618.51, or an average of $51.54 per month. At the time of his discharge, the contract under which the union and appellee were operating had about twelve and one-half more months to run. Assuming

6. 9 Wigmore on Evidence, § 2470, p. 227 (3rd ed. 1940).

7. The error is further magnified by the fact that the court's actual interpretation of Article XV, Section 3 seems to be based at least in part on speculation, for there is no evidence in the record which would support the finding that the clause in question refers solely to mistakes of fact. Appellee has urged only that Article XV, Section 3, is a procedural regulation.

a wrongful discharge, appellant made out a prima facie case of damages when he established his wage rate and the length of the term of the contract remaining, i. e., $51.54 per month for twelve and one-half months or $644.25.[8] Appellee's contention, that the burden was on appellant to offer evidence of other earnings which he obtained or could have obtained subsequent to his discharge in order to mitigate his damages, is incorrect. The burden is on appellee to come forward with such proof.[9] Alleging that there was evidence in this case that appellant secured other gainful employment,[10] appellee contends that this fact shifted the burden here to appellant to show how much he earned from such work, but this argument is also incorrect.[11]

We need not decide at this time whether appellant is entitled to the other elements of damage claimed by him or injunctive relief. We hold only that he established a prima facie case of a wage loss and that it was error to rule against him on this point.

■ Since the case must be retried, we deem it appropriate for us to comment on certain other rulings and aspects of the proceedings. We have treated only the first of the two principal issues involved here, and have held that on this point there must be a new trial. In view of the fact that the second question raised, i. e., the propriety of the "cause" for appellant's discharge, will never be reached if the first question is ultimately resolved against appellant, it would be improper for us at this time to consider it, and therefore as to it we express no opinion. However, there is a ruling of the trial court pertaining to the second issue to which we wish to call attention. Appellant offered testimony to the effect that his invocation of the Fifth Amendment before a congressional committee was the sole reason for his discharge, and that appellee gave no consideration to any other mitigating factors. This evidence was excluded by the court but it was admissible as bearing on the exact reasons for appellant's release. Appellee asserts in its brief that the discharge was motivated by a desire on its part to protect its own reputation and good will and the morale of its other employees, but there is no actual evidence of this in the record at present, other than the declarations contained in the "policy." Appellee should produce its proof on this point on retrial. If this issue is reached, it will obviously be quite important for the court to know what was the precise "cause" for appellant's discharge.[12]

Various other assignments of error and particularly appellant's claim that he is the representative of a class,[13] we need not consider at this time, for they do not become important until liability is established and are not in any way dispositive of the case.

■ Finally, we think appellant's contention that appellee breached its contract by not giving him a warning notice as provided for by Article XV, Section 3 is un-

8. Van Wyck v. Mannino, 1939, 256 App. Div. 256, 9 N.Y.S.2d 684, 686.

9. Annotations, 17 A.L.R.2d 968, 978–986; 134 A.L.R. 242, 257–270; 5 Williston on Contracts, § 1360 (rev. ed. 1937).

10. Appellant disputes this claim. It appears that before and after his discharge, appellant was president of the union, and that prior to his discharge he was paid by the union for part-time work.

11. Fisher Construction Company v. Lerche, 9 Cir., 1956, 232 F.2d 508, 509–510.

12. Compare, in this regard, the views advocated in the following: 71 Harv.L.R. 736 (1958); note, "Is Invocation of The Fifth Amendment or Alleged Subversive Activity 'Just Cause' for Dismissal of a Privately Employed Individual?", 11 Rutgers L.R. 745 (1957); Annotation, 51 A.L.R.2d 742. We do not, of course, commit ourselves to any of these positions at this time.

13. See Municipal Court Civil Rule 23.

sound. What penalty appellant feels he should have been warned of before it was imposed is not clear from his brief. If he refers to his suspension, any claim he might have in this regard is barred by the statute of limitations.[14] If it is his discharge that appellant complains of, we believe that the ninety-day suspension with pay immediately preceding his dismissal as provided for in the "policy" constituted a sufficient compliance with the notice requirement. It is clear that appellant was aware, during the ninety-day period, of the existence of the "policy," its provisions, and the fact that he was to be discharged.

Reversed with instructions to grant a new trial.

HOOD, Associate Judge (concurring).

I concur with the majority, but believe that the new trial ordered should be limited specifically and definitely to appellant's claim for damages for breach of contract. In his complaint he claimed damages of $3,000 and such claim lies within the jurisdiction of the Municipal Court. However, the complaint did not stop there. It went further and sought an injunction on behalf of appellant and persons similarly situated. In his brief here appellant says his action was brought on his own behalf and in behalf of others similarly situated, that his action met the legal requirements of a class action, and that the chief objective of the action is the securing of injunctive relief. If the action is a true class action then the jurisdictional amount is the aggregation of the claims of the class and would exceed the jurisdictional limit of the trial court.[1]

Furthermore, it is my understanding that the United States Court of Appeals in United Electrical, Radio & Machine Workers of America v. General Electric Co., 97 U.S.App.D.C. 306, 231 F.2d 259, ruled that the injunctive relief here sought is availa-

ble to neither the union nor appellant. I understand that case to hold that if appellant has any claim that is judicially enforceable, his claim is strictly one for damages for breach of contract; and that since it appeared that his claim did not exceed $3,000, it is one within the jurisdiction of the Municipal Court. It is my view that before a new trial is had appellant should be required to amend his complaint to make it clear that his claim is merely one for damages not exceeding $3,000, and if he fails to do so his complaint should be dismissed for lack of jurisdiction.

---

14. Code 1951, § 12–201. Suspension took place on December 11, 1953, and this suit was filed in February 1957.

1. Moore's Federal Practice (2d ed.) § 23:-13; Barron & Holtzoff, Federal Practice and Procedure, § 569.