[Civ. No. 20109. Second Dist., Div. One. May 10, 1954.]

BOARD OF EDUCATION OF THE CITY OF LOS ANGELES, Respondent, v. JEAN BENSON WILKINSON, Appellant.

Kenny & Morris and Daniel G. Marshall for Appellant.

Harold W. Kennedy, County Counsel (Los Angeles), Gerald G. Kelly, Assistant County Counsel, William E. Lamoreaux and Clarence H. Langstaff, Deputy County Counsel, for Respondent.

DRAPEAU, J.—The superintendent of schools reported to the board of education of the city of Los Angeles that within the area included within the boundaries of the Los Angeles School District there were "active, disciplined communist organizations presently functioning." He also reported that there was a clear and present danger that the members of such organizations would "engage in concerted effort to hamper, restrict, interfere with, impede, and nullify the efforts of the Los Angeles City Board of Education to comply with and enforce the provisions of section 8275 of the Education Code of the State of California. That section prohibits the advocacy or teaching of communism "for the purpose of undermining the patriotism for and the belief in the government of the United States and of the State of California in the minds of pupils."

The board of education adopted a rule that no person "who is knowingly a member of the Communist Party shall hereafter be employed by, or, except as provided in Section 3

hereof, retained in the employment of, any school district governed by the Los Angeles City Board of Education.''

Section 3 of the rule provides that any employee of any school district governed by the Los Angeles City board of education who now, or within one year prior to the date of the adoption of the rule, was knowingly a member of the Communist Party ''shall within thirty days of the date of the adoption of this rule file with the Los Angeles City Board of Education a verified statement that he is no longer a member of the Communist Party and that such membership has been terminated in good faith.''

Section 5 of the rule provides, ''It shall be the duty of any employee of any school district governed by the Los Angeles City Board of Education who may be subpoenaed by a United States Congressional Un-American Activities Committee or a California Legislative Un-American Activities Committee or any other committee or subcommittee of the United States Congress or the California Legislature, or of either House of either thereof, to appear before said committee or subcommittee and specifically to answer under oath questions propounded by the committee or subcommittee relating to . . . present or . . . past membership in any organization now advocating the forceful overthrow of the government of the United States or of any state or political subdivision thereof.''

A copy of the rule was personally served upon Jean Benson Wilkinson, a permanent high school teacher in the city system, and defendant in this case.

Thereafter the superintendent of schools formally charged defendant with unprofessional conduct, in that she appeared before the Fact-Finding Committee on Un-American Activities of the California State Senate, and failed and refused to answer questions whether she had joined the Communist Party in 1941 and was presently a member thereof.

Defendant demanded a hearing on the charge. The board of education elected to file a complaint in the superior court, charging that there existed causes for dismissing defendant from the Los Angeles school system.

The trial court found defendant guilty of unprofessional conduct within the meaning of section 13521, subdivision (a), of the Education Code, and adjudged that the school board ''may dismiss the defendant as certificated employee of the Los Angeles City School District.'' Defendant appeals from the judgment.

Defendant contends:

1. That she was excused from answering questions before the committee under the provisions of section 1881 of the Code of Civil Procedure. This is the code section that excuses a wife from testifying against her husband.

2. That there was no final refusal to answer the questions directed to her.

3. That the trial court should have exercised its discretion to find that in the circumstances in this case there was no unprofessional conduct on her part.

4. That the Levering Act (Gov. Code, §§ 3100-3109) precludes any action against defendant in the circumstances in this case.

To understand these contentions it is necessary to set out considerable portions of the record.

Defendant's husband was a witness before the committee, just preceding defendant's appearance. Mr. Combs, counsel for the committee, asked Mrs. Wilkinson what her name was and where she lived. She answered these questions.

Then Mr. Combs asked, "You are the wife of Frank Wilkinson?" To this question the witness made the following reply:

"I refuse to testify in this particular hearing because it is obviously an investigation into my own husband's political activities. So therefore I must refuse on the grounds of Section 1881 of the Code of Civil Procedure. You gentlemen no doubt, some of you anyway, are married. You know it is a very difficult position to be in."

To this statement Mr. Combs replied: "Mrs. Wilkinson, my questions are not concerning your husband's activities but your own activities. I will ask you no questions concerning your husband's activities."

After some further discussion, the following occurred:

"Q. By Mr. Combs. What is your occupation, Mrs. Wilkinson? A. I will have to refuse on the grounds I previously stated.

"Mr. Burns. There has been no stipulation as to the refusal of this witness.

"Mr. Combs. No, Mr. Chairman. Will the Chairman direct the witness to answer the question?

"Senator Burns. The Chair on behalf of the Committee will instruct the witness to answer the question that has been asked by the Committee counsel.

"The Witness. Well, I must refuse on the same grounds.

"Q. By Mr. Combs. Would you mind stating the grounds? A. On the grounds that as I understand it in Section 1881 of the Code of Civil Procedure it says that certain confidential conversations as between husband and wife or a lawyer and client are confidential, and those would be excepted.

"Q. Is that the only ground for your refusal to answer the question? A. Yes, it is."

Finally the following proceedings took place:

"Q. And that you are now employed as a teacher in the East Los Angeles Girls Vocational High School? A. I refuse to answer the question on the grounds previously stated.

"Senator Dilworth. Well now, Mr. Chairman, it seems to me that her conversations with her husband have nothing to do with her employment in the high school.

"Senator Burns. That is the ruling of the Chair, and the witness in each instance is requested to reply to the question.

"Q. By Mr. Combs. Are you acquainted with Alvin Averbuck? A. I refuse to answer the question on the grounds heretofore stated.

"Q. Are you acquainted with Evelyn Averbuck, his wife? A. I refuse to answer the question on the grounds previously stated.

"Q. And is it not a fact within the scope of your own personal knowledge, Mrs. Wilkinson, that Alvin Averbuck is the Organizational Secretary of the Communist Party of Los Angeles County? A. I refuse to answer the question on the grounds previously stated.

"Q. Did you ever have anything personally to do with an organization known as the League for Industrial Democracy? A. I refuse to answer the question on the grounds previously stated.

"Q. And is it not a fact that you are at the present time a member of the same Communist Party Club as your husband, to-wit, the Altgeld Club No. 1 of the Communist Party of the County of Los Angeles? A. I refuse to answer the question on the grounds previously stated.

"Q. Are you presently a member of the Communist Party, Mrs. Wilkinson? A. I refuse to answer the question on the grounds previously stated.

"Mr. Combs. That is all."

The record supplies a complete answer to all of defendant's contentions.

■ Excepting one question, there is nothing in the record

that had anything to do with defendant's husband. With that exception, no question asked comes within the provisions of section 1881 of the Code of Civil Procedure.

When defendant refused to answer the questions asked her she was guilty of unprofessional conduct as an employee of the school system. The trial court had no discretion other than to so find.

■ A teacher's employment in the public schools is a privilege, not a right. A condition implicit in that privilege is loyalty to the government under which the school system functions. ■ It is the duty of every teacher to answer proper questions in relation to his fitness to teach our youth when put to him by a lawfully constituted body authorized to propound such questions.

The trial judge in a well-considered memorandum of opinion succinctly states the principles here involved:

"I hold, in view of the declared policy of Education Code 8275, and plain common sense, that the rule requiring a teacher to answer questions concerning her activities in Communism before a proper investigating committee is a reasonable rule; the violation of which constitutes unprofessional conduct within the meaning of Education Code Section 13521(a). This is so because such conduct is inherently unprofessional in one who is hired by a governmental agency in one of the most important of governmental functions—the teaching and instruction of the youth of the country. The power of a teacher to mold the thoughts and conduct of children is so great that surely the State must have power to inquire into the beliefs of the teacher in whose care the youth of the country is placed for instruction. Such conduct, furthermore, is unprofessional under the rule adopted by the Board of Education.

" 'Past conduct and loyalty have a reasonable relationship to present fitness and trustworthiness, and public servants may properly be required to furnish information regarding past membership in organizations that to their knowledge advocated overthrow of government by force or other unlawful means.' (*Pockman* v. *Leonard*, 39 Cal.2d 676 [249 P.2d 267].)

"The defendant contends she was protected by C.C.P. 1881, relating to privilege of confidential communications between husband and wife; being an exception recognized by section 5d of the rules adopted September 22, 1952; which rules were soon thereafter personally served on her. The transcript of

the Committee hearing nowhere discloses any justification for claiming the husband and wife privilege. All questions were asked directly of her, and none concerned itself with her husband or any communication between them. This Court cannot now be concerned with her personal reasons for not answering. It matters only that she refused to answer, and whether or not she was ill informed, misguided, or may have later changed her mind on the subject if ordered by this or some other Court is of no concern."

Nothing in *In re McLain,* 99 Cal.App.2d 274 [221 P.2d 323], is pertinent here. This is not a contempt proceeding. In this case the duty of the court began and ended with a determination that defendant's conduct did or did not constitute grounds for dismissal.

█ Referring to defendant's contention relative to the Levering Act: Our Supreme Court held in *Fraser* v. *Regents of University of California,* 39 Cal.2d 717 [249 P.2d 283], that that act fully occupies the field of loyalty oaths for public employees.

But this does not mean that the Levering Act prohibits governing bodies in our state school system from requiring their employees to be loyal to the State of California and to the United States of America. The Levering Act does not relieve such bodies from the duty of inquiring into the fitness of teachers, and from prescribing rules reasonably necessary to protect our schools against traitors—infamous traitors who would scatter dragons' teeth amongst boys and girls of their own American fellow citizens.

Section 13230 of the Education Code requires that "Each teacher shall endeavor to impress upon the minds of the pupils the principles of . . . patriotism, . . . and to train them up to a true comprehension of the rights, duties and dignity of American citizenship." Section 8275 of that code provides that no teacher giving instruction in any school shall advocate or teach communism with the intent to indoctrinate any pupil with or inculcate a preference in the mind of any pupil for communism. "For the purposes of this section, communism is a political theory that the presently existing form of government of the United States or of this State should be changed, by force, violence or other unconstitutional means to a totalitarian dictatorship which is based on the principles of communism as expounded by Marx, Lenin, and Stalin."

In the life-and-death struggle into which our people have

been plunged by the monstrous conspiracy called communism, it is becoming more and more apparent that it is essential for the continuance of our national life that we know who is for us and who is against us. This is no time to allow any person who would destroy us, our liberties, our religious convictions, and our government to be employed in any branch of that government—"to bite the hand that feeds it." The men and women of America who pay their salaries have a right to know whether or not any of their employees are communists.

In *Christal* v. *Police Commission,* 33 Cal.App.2d 564 [92 P.2d 416], police officers refused to answer questions before a grand jury involving malfeasance in the performance of their duties. In upholding the right of the police commission to discharge these officers for their refusal to answer questions, the Appellate Court says [p. 568]: "As we view the situation, when pertinent questions were propounded to appellants before the grand jury, the answers to which questions would tend to incriminate them, they were put to a choice which they voluntarily made. Duty required them to answer. Privilege permitted them to refuse to answer. They chose to exercise the privilege, but the exercise of such privilege was wholly inconsistent with their duty as police officers. They claim that they had a constitutional right to refuse to answer under the circumstances, but it is certain that they had no constitutional right to remain police officers in the face of their clear violation of the duty imposed upon them. (*McAuliffe* v. *Mayor of New Bedford,* 155 Mass. 216 [29 N.E. 517].) We are of the opinion that such a violation of duty would constitute cause for dismissal even in the absence of any specific rule requiring such officers to give testimony before the grand jury, . . ."

In the McAuliffe case Mr. Justice Holmes, speaking for the Massachusetts court, succinctly stated the rule: "The petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman."

In the recent case of *Board of Education* v. *Swan,* 41 Cal. 2d 546, 556 [261 P.2d 261], our Supreme Court says:

"One employed in public service does not have a constitutional right to such employment and is subject to reasonable supervision and restriction by the authorized governmental body."

And in the same case the court quotes from *Goldsmith* v. *Board of Education,* 66 Cal.App. 157 [225 P. 783]:

"The teacher is entrusted with the custody of children and their high preparation for useful life. His habits, his speech, his good name, his cleanliness, the wisdom and propriety of his unofficial utterances, his associations, all are involved. His ability to inspire children and to govern them, his power as a teacher, and the character for which he stands are matters of major concern in a teacher's selection and retention . . . No one has a natural or inherent right to teach in a public school . . . And the legislatures of our state . . . for reasons of public policy may make the right to teach in any particular school subject to a broad discretion in the school authorities to dismiss for causes which come within very general designations."

In *Pockman* v. *Leonard, supra,* 39 Cal.2d 676, 686, our Supreme Court points out the effect of recent decisions of the United States Supreme Court upon the reciprocal rights of the public and its employees:

"It has been held that a governmental body has the right to direct that its employees shall not belong to organizations which they know advocate overthrow of the government by force or other unlawful means, and that they may be required to make sworn statements similar to the oath prescribed by section 3103 as a condition to obtaining or continuing in public employment. (*Adler* v. *Board of Education of the City of New York,* 342 U.S. 485 [72 S.Ct. 380, 96 L.Ed. 517]; *Garner* v. *Los Angeles Board,* 341 U.S. 716 [71 S.Ct. 909, 95 L.Ed. 1317]; *Gerende* v. *Board of Supervisors of Elections,* 341 U.S. 56 [71 S.Ct. 565, 95 L.Ed. 745]; *cf. Dennis* v. *United States,* 341 U.S. 494 [71 S.Ct. 857, 95 L.Ed. 1137]; *American Communications Assn.* v. *Douds,* 339 U.S. 382 [70 S.Ct. 674, 94 L.Ed. 925].) . . . A person's associates, as well as his conduct are relevant factors in determining fitness and loyalty, and the state, under its police power, may properly limit a person's freedom of choice between membership in such organizations and employment in the school system. (*Adler* v. *Board of Education of the City of New York,* 342 U.S. 485 [72 S.Ct. 380, 385, 96 L.Ed. 517].)"

For the reasons stated, the judgment is affirmed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied May 24, 1954, and appellant's petition for a hearing by the Supreme Court was denied July 7, 1954. Carter, J., was of the opinion that the petition should be granted.