**Horace B. DAVIS, Plaintiff,**

v.

**The UNIVERSITY OF KANSAS CITY,
a corporation, Defendant.**

United States District Court
W. D. Missouri, W. D.
April 15, 1955.

Horace B. Davis, pro se, and Fyke Farmer, Nashville, Tenn., for plaintiff.

Myron K. Ellison, Michael J. Bogutski and Lawrence R. Brown, of Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, Mo., for defendant.

WHITTAKER, District Judge.

This matter is now before me upon defendant's motion, filed under Rule 12 (b) (6), 28 U.S.C.A., to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted.

The essence of the 27-page complaint is that plaintiff, a citizen of Missouri, in 1947, accepted a position as Associate Professor of Economics on the faculty of the University of Kansas City, a Missouri corporation, and, in 1951—having had at least seven years of full-time service with instructional or professional rank—"the Board of Trustees", of defendant, "approved the appointment of plaintiff on permanent or continuous tenure", rendering applicable to plaintiff a contractual covenant reading, in part, that "When a full-time officer of instruction has permanent or continuous tenure, his services shall be terminated only for adequate cause, except in the case of retirement for age or because of financial exigencies"; that prior to June 4, 1953, the defendant "and a United States Senator", Senator Jenner, entered into a conspiracy to deprive plaintiff "of his usual occupation or calling as a teacher or instructor of economics", and that, on the latter date, Senator Jenner, as chairman of a Senate subcommittee, known as "Internal Security Subcommittee", under color of authority as such chairman, but actually without Constitutional or legal right, caused to be issued and served

upon plaintiff a Congressional subpoena, commanding him to appear before said subcommittee at Chicago, Illinois, on June 9, 1953, and give testimony "concerning the matter under inquiry by the subcommittee", namely, "subversive influence in the educational process", and, as commanded by that subpoena, plaintiff appeared, and after being sworn, was asked by Senator Jenner, or by counsel for the subcommittee, Mr. Morris, whether he was, or ever had been, a Communist, and, defendant, considering the question improper, stood "on his Constitutional rights and refused to answer their line of questioning", and that widespread newspaper publicity of the incident followed.

That, on July 23, 1953, the chief executive administrator of defendant wrote plaintiff, advising him that a joint meeting of the executive committee and the committee on education of the Board of Trustees would be held on Sunday, July 26, 1953, at 2:30 o'clock in the afternoon, and inviting plaintiff to be present. The meeting date was afterwards changed to August 4, 1953. Plaintiff appeared and was told by the chairman of the Board of Trustees that the meeting was "exploratory" of plaintiff's publicized "refusal to testify before the Internal Security Subcommittee at the hearing in Chicago on June 9, 1953, 'in regard to possible Communistic activities' ", and, at that meeting, the chairman of the Board of Trustees of defendant "threatened plaintiff with dismissal from the faculty unless he answered the questions:

"First, whether or not you are or ever have been a member of the Communist Party?

"Secondly, whether you now are or whether you have ever been active in the work of the Communist Party or employed by or associated with any of its organizations?

"The third question, which might be somewhat different in form, which we would like to ask you, whether you now are supporting or whether you have ever supported Communist activities?"

Plaintiff, contending that these questions were in excess of the powers of the University officials, and amounted to an infringement upon his rights as a member of the faculty of defendant, refused to answer.

On August 10, 1953, the executive administrator of the University wrote plaintiff, saying, in part:

"This letter is to inform you in writing that on December 1, 1953, there will be a hearing before the President's Advisory Council and the executive committee of the Board of Trustees, on the matter of termination of your services.

"The charges on which I am suggesting the termination of your services are that you failed to disclose in your application for employment to the University of Kansas City pertinent information in regard to your prior teaching experience, and that you refused to answer questions put to you by the trustees of the University, or to cooperate with them in the performance of their duty to determine whether you are bound by commitments which render you unfit to be retained in a position of educational trust."

That, pursuant to said notice, a hearing was held on December 1, 2 and 8, 1953, by the executive committee of the Board of Trustees, and the President's Advisory Council, of the University "on the matter of charges looking to the dismissal of Dr. Horace B. Davis", which hearings were attended by plaintiff, and at which evidence was introduced by counsel for the University upon the charges and plaintiff submitted a written statement; that after said hearing, and on or about December 17, 1953, defendant dismissed plaintiff from its faculty, but "granted his salary for a period of one year from the date of the dismissal as there was no finding that he was guilty of moral turpitude".

Plaintiff then alleges that his dismissal was wrongful and without "adequate cause", and he prays an injunction restraining the University from denying to him his tenure rights as a member of its faculty, and restraining defendant from withholding payment of his salary, and that, if not entitled to such injunction, he be given judgment "for the full amount of damages and injury sustained by the plaintiff", without mentioning any amount.

Jurisdiction is alleged to rest upon Section 1331, Title 28 U.S.C.A.

As stated, defendant has moved, under Rule 12(b) (6) of Federal Rules of Civil Procedure, to dismiss the complaint for failure to state a claim upon which relief can be granted.

Though diversity does not exist, and questions of jurisdiction under Section 1331, Title 28 U.S.C.A. suggest themselves, inasmuch as no question of jurisdiction has been specifically raised, I pass that matter and proceed immediately to the merits.

At the threshhold it should be pointed out that plaintiff's complaint admits that his tenure was not undefeatable, by alleging (p. 23) that it was subject to a covenant providing that "his services shall be terminated only for adequate cause". His complaint admits, too, that he was formally charged, by the University's letter of August 10, 1953, above-quoted, with, among other things, "that you refuse to answer questions put to you by the trustees of the University, or to cooperate with them in the performance of their duty to determine whether you are bound by commitments which render you unfit to be retained in a position of educational trust", and that he received notice of those charges and was given a hearing thereon before dismissal.

This squarely presents the question of whether plaintiff's refusal to answer the questions propounded to him by University officials at the meeting of August 4, 1953, asking whether or not he is or ever was a member of the Communist Party, constitutes "adequate cause" for his dismissal.

I believe it does. Plaintiff had a lawful right, under the Fifth Amendment to the Constitution, to refuse to answer, and no inference of criminality can be drawn from his failure to answer. But he did not have a Constitutional right to remain a public school teacher. And the refusal of a teacher—in a most intimate position to mould the minds of the youth of the country—to answer to the responsible officials of the school whether he is a member of a found and declared conspiracy by a godless group to overthrow our government by force, constitutes "adequate cause" for the dismissal of such a teacher. The public will not stand, and they ought not to stand, for such reticence or refusals to answer by the teachers in their schools. And the University officials would have been derelict in their duties had they not asked plaintiff—in the light of his refusal to answer the Senate subcommittee's questions as to whether he was a Communist —whether he was or ever had been a member of the Communist Party, and, having asked him those questions, and he having refused to answer them, would have been derelict in their duties, and would have destroyed the University, had they not dismissed him.

These conclusions are supported by the cases of Board of Education of City of Los Angeles v. Eisenberg, Cal.App., 277 P.2d 943; Faxon v. School Committee of Boston, Mass., 120 N.E.2d 772, and the numerous cases therein cited and analyzed; Board of Education of City of Los Angeles v. Wilkinson, 125 Cal.App.2d 100, 270 P.2d 82; Daniman v. Board of Education, 306 N.Y. 532, 119 N.E.2d 373; Application of Levy, 5 Cir., 214 F.2d 331.

It was clearly open to the University officials to find, upon notice and hearing, as they did find, that plaintiff's failure to answer their questions as to whether he was a member of the Communist Party, constituted "adequate cause" for plaintiff's dismissal as a teacher in the University of Kansas City.

It follows, in my opinion, that plaintiff's complaint fails to state a claim upon which relief can be granted, and that defendant's motion to dismiss is well taken, and should be sustained.