

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

May 6, 1959

Hon. R. H. Cory, Chairman
State Affairs Committee
House of Representatives
56th Legislature
Austin, Texas

Opinion No. WW-619

Re: Constitutionality of House
Bill No. 495 and pending
committee amendment to said
Bill and related questions.

Dear Mr. Cory:

The State Affairs Committee of the House has requested, through you as Chairman of the Committee, the opinion of the Attorney General relative to the constitutionality of House Bill No. 495 and a pending committee amendment to the bill. Your request for an opinion asks the following questions:

"1. Request a ruling on the constitutionality of H.B. 495.

"2. Request a ruling as to whether or not teachers, administrators, and supervisors in our state-supported colleges, universities, public junior colleges and public schools are holders of 'public trust' within the meaning of Article I, Section 4, of the Constitution of The State of Texas.

"3. Request an opinion on whether or not H.B. 495 is enabling legislation for Article I, Section 4, of the Constitution of the State of Texas.

"4. Request that the opinion rule on above three points on both the original bill and the pending committee amendment, which is a complete substitute."

Section 1 of H.B. 495 provides as follows:

"No religious test shall ever be required as a qualification to teach or instruct in the Public Schools, Public Junior College or State Colleges or Universities of this State; nor shall anyone be excluded from holding said job or position on account of his religious sentiments, provided he acknowledge the existence of a Supreme Being."

Section 2 requires each teacher, instructor and professor to acknowledge under oath his belief in a Supreme Being at the beginning of each school year as a condition to his employment or retention. Section 3 imposes a penalty for violation of the act of $100 to $1000 fine.

The committee amendment, which contains a complete substitute for the bill, provides in Section 1 as follows:

"No religious test shall ever be required as a qualification for administrative and supervisory employees in the public schools, public junior colleges or state colleges or universities of this State, nor as a qualification to teach, instruct, supervise or administer in such institutions, nor shall anyone be excluded from holding any of said positions on account of his religious sentiments, provided he acknowledge the existence of a Supreme Being."

Sections 2 and 3 require the oath as a condition of employment or re-employment, but indicate that teachers and other employees now under contract need not give the oath until completion of their contract term. No criminal penalty is provided, but Section 4 provides that no State funds shall be paid as salary or other compensation in the absence of compliance with this Act.

Section 1 of Article VII of the Constitution of Texas renders it mandatory that the Legislature "establish and make suitable provision for the support and maintenance of an efficient system of public free schools." Under this section the Legislature has the power to do anything not otherwise prohibited by the Constitution in order to discharge the duty placed upon it. Glass v. Pool, 166 S.W. 375, 106 Tex. 266.

The Bill of Rights embodied in both our State and Federal Constitutions guarantees to the individual certain inalienable rights which both the courts and the legislative bodies of the nation have traditionally guarded. Included is the right of the individual to think and believe on matters both temporal and spiritual in accordance with the dictates of his own conscience. Implicit in the right to believe is also the right to disbelieve. It does not necessarily follow, however, that a person may think, believe, or act as he may choose without affecting rights to public provileges to which he might otherwise be entitled. This limiting factor was illustrated by Justice Holmes in an early case when he declared that the appellant, a policeman, had a constitutional right to believe as he may wish, but he had no constitutional right to be a policeman. This legal principle is announced and followed in a number of cases, both federal and state.

The rule is announced in 78 C.J.S., Schools and School Districts, Section 154, as follows:

"A person has no constitutional right to be employed as a teacher in the public schools, as such employment is not an uninhibited privilege, and he has no right to serve except on such terms as the state prescribes. . . . Subject to such limitations as may be imposed by the Constitution, the power to fix the qualifications of teachers may be exercised by the legislature or by school authorities under and within the limits of the authority conferred by statute. . . . In the exercise of its power, the state may require as qualifications and declare as disqualifications, factors other than scholastic, including as a qualification, adherence to the form of government of the United States, or a loyalty oath, and as a disqualification, advocacy of the overthrow of the government by force, violence or other unlawful means. . . ."

See also: Board of Education of City of Los Angeles v. Eisenberg, 277 P.2d 943; Adler v. Board of Education of City of New York, 342 U.S. 485; Marrs v. Matthews, 270 S.W. 586 (Tex. Civ.App. 1925); Board of Education of City of Los Angeles v. Wilkinson, 270 P.2d 82; City of Amarillo v. Hancock, 239 S.W.2d 788 (Tex.Sup.); Fuller v. Mitchell, 269 S.W.2d 517 (Civ.App. 1954, error ref., n.r.e.).

In the Adler case, supra, the Supreme Court of the United States, per Justice Minton, described the obligations of teachers to the State, as their employing authority, thusly:

"It is clear that such persons (school personnel), have the right under our law to assemble, speak, think and believe as they will. . . . It is equally clear that they have no right to work for the State in the school system on their own terms."

Of similar import is the language of the Texas Court of Civil Appeals in Marrs v. Matthews, supra.

It must necessarily follow from what we have said that, unless prohibited by some specific provision of our State Constitution, both House Bill 495 and its pending amendment are constitutional. The bill does not, in our opinion, contravene the general guarantees of personal religious freedom as contained in either the Fourteenth Amendment of the United States Constitution or Section 6 of Article I of the Texas Constitution. The authorities cited, we believe, sustain this view.

There remains the question of whether the proposed legislation is repugnant to Section 4 of Article I of the Constitution of Texas, which provides:

"No religious test shall ever be required as a qualification to any office, or public trust, in this State; nor shall any one be excluded from holding office on account of his religious sentiments, provided he acknowledge the existence of a Supreme Being."

The earlier Constitutions of Texas simply provided that no religious test should ever be required as a qualification of any office or public trust. The language was virtually identical to that of Clause 3 of Article VI of the Constitution of the United States as now written. The Constitution of 1876, however, added the provision "nor shall anyone be excluded from holding office on account of his religious sentiments, provided he acknowledge the existence of a Supreme Being."

It has been suggested that the effect of this added provision was to make it possible to exclude atheists from public "office", but not from a "public trust", the latter being

still governed by the "no religious test" provision. We are
unable to agree with this conclusion.

We have reached the conclusion that the words "pro-
vided he acknowledge the existence of a Supreme Being" modify
Section 4 of Article I in its entirety, and not just the last
clause thereof. It is evident from reading the committee amend-
ment to H.B. 495 that the committee must have reached the same
conclusion. A semi-colon separates the two clauses in the con-
stitutional provision, but the committee amendment, which follows
the constitutional language very closely, omits the semi-colon
and uses only commas. Section 1 of the committee amendment is
quoted at length near the beginning of this opinion. We quote
the material provisions:

> "No religious test shall ever be required as
> a qualification for . . . employees . . ., nor as a
> qualification to teach, . . . in such institutions,
> nor shall anyone be excluded from holding any of
> said positions on account of his religious senti-
> ments, provided he acknowledge the existence of a
> Supreme Being."

It seems to us that the word "nor" in the Constitu-
tional provision furnishes the key to the proper interpretation
of the language used. The first clause, preceding the semi-
colon, forbids the use of a religious test as a qualification for
any office or public trust. Standing alone, such a provision
would certainly limit the power of the Legislature in setting
up qualifications for office. Now, if we assume that belief
in a Supreme Being is a religious test within the prohibition
in the first clause, and that the proviso only refers to the
second clause, then the fact that persons may be excluded from
office under the second clause would create a conflict between
the two clauses, or at least clause number two would be an
exception to clause number one.

It is at this point that the word "nor" assumes criti-
cal importance. The word "nor" is expressive of the fact that
the words which follow it will be in general agreement with that
which has gone before. If a repugnant provision such as an ex-
ception is to follow, it is our opinion that the only logical
word to use would be "but", or "however", or "provided", or some
other word of similar import. On the other hand, if we consider
the constitutional section as a complete, integrated sentence,
with no conflicts, but with an exception at the end which is
applicable to all that has gone before, then the use of the word

"nor" becomes understandable.  It is true that the provision
in question is not couched in the clearest language, and the
punctuation may leave something to be desired, but the intent
and purpose of the framers of our Constitution is clear,  The
second clause before the proviso adds nothing new, since "re-
ligious sentiments" is certainly included within the term "re-
ligious test".  We therefore think that the first part of the
second clause was added merely for emphasis, and the net effect
of the constitutional provision is that no person may be dis-
qualified for public office or public trust as long as he ac-
knowledges the existence of a Supreme Being.  It follows that
we are of the opinion that H.B. 495 and the committee amendment
thereto are not in violation of Section 4 of Article I of the
Texas Constitution.

There is another reason why we think the bill and its
amendment are constitutional.  The first clause of the constitu-
tional provision refers to "any office, or public trust".  The
second cluase refers to "holding office".  For the reasons stated
below, we are of the opinion that the words "holding office" are
used in the sense that they mean the holding of a position of
public trust as well as the holding of that which is technically
denominated an "office".  If the intention of the second clause
of the provision had been to refer only to an "office" and to
exclude a "public trust" from its provision, we think it most
likely that some reference to the term "public trust" would
have been made in the second clause.  No such reference was made.

This office has consistently used the terms "office"
and "public trust" interchangeably.  Consider for example:

In Attorney General's Opinion No. V-834, we said:

"Membership on the board of trustees of an
independent school district is an office. . . .
But a trustee of an independent school district
holds an office of honor and trust within the
meaning of Section 33 of Article XVI of the Texas
Constitution."

Attorney General's Opinion No. O-1422 involved a local
school board, a college board and a U.S. Postmaster. It stated:

"There can be no doubt that all three of the
offices here under consideration are positions of
honor, trust or profit within the meaning of the
above quoted constitutional provision."

In Attorney General's Opinion No. O-2701, written by Honorable William J. Fanning, formerly an Assistant Attorney General and now a Justice of the Texarkana Court of Civil Appeals, it is said:

"There can be no doubt that a trustee of an independent school district holds an office of honor and trust within the meaning of Article XVI, Section 33 of our State Constitution."

The Texas Constitution so uses the words. Article III, Section 20, makes certain persons indebted to the State ineligible for "any office of profit or trust under the State Government."

The case of Orndorff v. State, 108 S.W.2d 206, 209 (Tex.Civ.App. 1937, error ref.) in construing the constitutional provision aforesaid, stated:

"It follows, necessarily, that though, within the contemplation of certain statutes, a county commissioner may not be an officer 'of' the State Government, he does hold an office of trust and profit 'under the State Government'."

In 67 C.J.S. 96, Officers, Section 1, it is said:

"The term 'office' is one which is employed to convey various meanings, and no one definition thereof can be relied on for all purposes and occasions. It has been said that, when used in any proper sense, the term implies a duty or duties to be performed, and that it is generally agreed that a position is an office when the elements of trust, honor and compensation combine with definite duties and responsibilities. An office has been defined as a duty, charge or trust, or a place of trust . . . a right and corresponding duty to execute a public or private trust . . .," etc.

In 42 Am.Jur. 879, Section 2, it is stated:

"There are numerous and varied definitions of the terms 'office', 'officer', 'public office', and 'public officer', as used in statutes and Constitutions. They are terms of vague and variant import, the meaning of which necessarily

varies with the connection in which they are used, and, to determine it correctly in a particular instance, regard must be had to the intention of the statute and the subject matter in reference to which the terms are used."

Section 8 of the above citation states:

"The American concept of a public office is that of a public agency or trust created in the interest and for the benefit of the people."

Section 9 provides:

"With us, public offices are public agencies or trusts. . . ."

What we have been trying to illustrate is perhaps best pointed out in the following quotation from Section 23 of the same authority:

"Constitutions and laws sometimes contain provisions applying to lucrative offices, and offices of trust, honor and profit. The courts have been called upon to define these terms. . . . The line between 'offices' and 'places of trust or profit' within the meaning of such provisions has not been clearly marked, and they may be considered as approaching each other so closely that they are in all essential features identical."

Our office held in Opinion No. V-325 that college professors, as well as public school teachers, hold positions of "honor, trust or profit". We are also of the opinion that administrators and supervisors in State supported colleges, universities, public junior colleges and public schools come within the same category. We accordingly answer your second question in the affirmative.

We also hold, in line with the authorities above quoted, that the words "holding office" in the second clause of the constitutional provision in question were used by the framers of the Constitution in the sense of holding a position of "public trust" as well as holding that which may technically be denominated an "office". We can perceive of no

substantial reason why the framers of our Constitution would be concerned over whether or not "officers" believe in a Supreme Being and yet not be equally concerned as to whether or not persons holding equally important positions called positions of "public trust" should believe in a Supreme Being.

We point out what we consider a possible flaw in the caption of the committee amendment which could impair the validity of the bill due to conflicting provisions. We refer to the portion requiring teachers, etc. 'to acknowledge the existence of a Supreme Being but that no religious test shall be required.' We have not found it necessary in this opinion to pass upon the question of whether or not the oath requirement in the bill is a 'religious test'. If it is a 'religious test', there would be a conflict in the caption. Because the issue is not free from doubt, it would be our suggestion that the caption be amended so as to eliminate this possible conflict.

It follows from what has been said that we are of the opinion that, with the exception of the possible defect in the caption above pointed out, H.B. 495 and the committee substitute therefor are constitutional. The bill is in the nature of enabling legislation, setting up the mechanics for applying the permissive exclusion from employment of those who decline to acknowledge the existence of a Supreme Being.

## SUMMARY

H.B. 495 and the committee substitute therefor requiring that teachers, administrators and supervisors in State-supported educational institutions must acknowledge the existence of a Supreme Being as a condition of employment, are constitutional. Such teachers, administrators and supervisors are holders of "public trust" within the meaning of Article I, Section 4 of the Texas Constitution. Such legislation is in the nature of enabling legislation under the said provision of the Constitution.

Yours very truly,

WILL WILSON
Attorney General of Texas

By J. Arthur Sandlin
Assistant

APPROVED:
OPINION COMMITTEE

Geo. P. Blackburn, Chairman
H. Grady Chandler
L. P. Lollar
Ralph Rash

REVIEWED FOR THE ATTORNEY GENERAL
BY:
    W. V. Geppert